## Silveus, Appellant, *v.* Grossman et al.

Argued March 22, 1932. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER and MAXEY, JJ.

*C. W. Waychoff*, of *Waychoff & Thompson*, with him *W. C. Montgomery*, for appellant.—A property owner cannot delegate an inherently dangerous duty to an independent contractor and thus escape liability to his adjoining property owner.

Where the injury results not from the manner of doing the work but from the doing of it at all, the employer is liable for the acts of an independent contractor: Foehr v. Ry., 40 Pa. Superior Ct. 7, 18; Smith v. Simmons, 103 Pa. 32.

Where the contract requires the performance of a work intrinsically dangerous, liability cannot be evaded by employing an independent contractor to do the work: Fitzpatrick v. Penfield, 267 Pa. 564.

*Jacob A. Markel,* with him *John S. Carter, Charles S. Carter* and *James J. Purman,* for appellee.—A principal is not liable for the negligence of an independent contractor in the performance of a lawful work: Painter v. Mayor of Pittsburgh, 46 Pa. 220; Allen v. Willard, 57 Pa. 374; Erie School Dist. v. Fuess, 98 Pa. 600; Smith v. Simmons, 103 Pa. 32; Harrison v. Collins, 86 Pa. 153; Foehr v. Ry., 40 Pa. Superior Ct. 7, 18; Gailey v. Ins. Co., 286 Pa. 311; Karl v. Juniata Co., 206 Pa. 633.

Where a person holds himself forth as skilled and competent to perform certain work, he is presumed to be competent.

The work of removing the walls was not "inherently" or "intrinsically" dangerous: Berberich v. Ebach, 131 Pa. 165; Walton v. Bryn Mawr Hotel, 160 Pa. 3; Jackman v. Rosenbaum Co., 263 Pa. 158; Chartiers Valley Gas Co. v. Lynch, 118 Pa. 362.

OPINION BY MR. JUSTICE MAXEY, April 11, 1932:

A fire almost completely destroyed defendants' building. After the fire the front wall and the front section of about 50 feet of the west wall remained standing. This section of the wall projected about 16 feet above the roof of the three-story part of plaintiff's adjoining property at the front, and about thirty feet above the two-story portion at the rear of plaintiff's property. Immediately after the fire the borough authorities notified the defendants to remove these menacing walls within twenty-four hours. Defendants straightway engaged one Kimbal as an independent contractor to take down these walls. He was by occupation a builder and he expressed confidence in his ability to perform the task assigned him. In taking down the wall, Kimbal fastened a cable to it and in pulling it over caused the wall to buckle and fall over on plaintiff's building doing considerable damage to it. This manner of performance indicated want of care on Kimbal's part. The question is

whether Kimbal or the defendants should respond to plaintiff in damages by reason of this negligence.

Defendants contend that they were relieved from liability because the work of razing the wall was in the hands of an independent contractor. The defendants asked for but were refused binding instructions in the trial court. The jury awarded the plaintiff $2,000 damages against Lee Grossman, one of the defendants, and under the direction of the court rendered a verdict in favor of the other defendants. The defendant Grossman moved for judgment n. o. v. Plaintiff moved for a new trial. The court refused the former but granted the latter. From the order granting a new trial and refusing judgment n. o. v. the defendant appealed to the Superior Court. The Superior Court reversed the order granting a new trial and reinstated and granted defendant's motion for judgment n. o. v. The plaintiff below then secured an allowance for an appeal from the Superior Court to this court.

The plaintiff below advances the proposition that the owner of a building which has been burned, leaving an unsupported brick wall standing in a weak and dangerous condition, cannot delegate to an independent contractor the duty of safely removing this menace so as to absolve himself from responsibility for damages caused another by the falling of the wall in the process of removal.

There are jurisdictions where the doctrine now contended for by appellant is applied and there it is held that "if one man engages another to perform work that is 'inherently dangerous,' he cannot relieve himself from responsibility for the consequences of that work." See Covington & Cincinnati Bridge Co. v. Steinbrock, 61 Ohio St. 215; 55 N. E. 618. This same doctrine was expressed in Bower v. Peate, 1 Q. B. Div. 321, 326, as follows: "A man who orders a work to be executed from which in the natural course of things injurious consequences to his neighbor must be expected to arise, un-

less means are adopted by which such consequences may be averted, is bound to see to the doing of that which is necessary to prevent mischief, and cannot relieve himself of his responsibility by employing someone else, whether it be the contractor employed to do the work from which the danger arises or some independent person, or to do what is necessary to prevent the act he has ordered done from becoming unlawful."

Whichever way this doctrine is expressed it is impracticable and unjust in application. There is no formula by the application of which it can be determined what work is or is not "inherently dangerous" or by which it can be determined whether or not injurious consequences to his neighbor "may be expected to arise" from the work "unless means are adopted to avert these consequences." From almost any kind of work injurious consequences may arise if the work is performed carelessly. Shingling a home will be a menace to those on the ground below the edge of the roof if the workman is careless in letting his hammer fall. Cleaning windows in lofty buildings will be a menace to those below if the window cleaner doesn't anchor himself. The cutting down of a shade tree or a telephone pole will be a menace to those near by if done carelessly. The erection of any building, large or small, will be dangerous to those in the vicinity if the erector or his aides are careless. The erection of skyscrapers and great bridges is always hazardous to those engaged in it and sometimes results in death and injury to those in the vicinity who are struck by objects falling during the construction process, yet no one would contend that a person, natural or artificial, who engages a contractor to erect a bridge or a building, is liable for injuries resulting to others from want of care on the part of the contractor and his workmen. The man of average prudence who engages another to do an important piece of lawful work will have a care that the man so engaged is fitted for his tasks and when thus reasonably assured he engages him as an individual

contractor he should not be held responsible for the negligence of the contractor and the latter's workmen. Should the doctrine be generally adopted that whenever work is to be done that may in the doing endanger others, the party for whom it is being done shall be held responsible for negligence in the manner of doing it, any man having important work of construction or destruction to do would hesitate about entrusting it to anybody. Such a doctrine if enforced would lead to business stagnation. Railroad executives would hesitate to engage a contractor to blast a way through a rock-cut because blasting is generally held to be "inherently dangerous" and the railroad would be held responsible for accidents resulting from the blasting. In every growing city old buildings are being continually torn down. From the doing of this work injurious consequences might be expected to arise unless the greatest care is taken. Must the owner of the property who ordinarily knows nothing about the art of razing buildings be held responsible for injuries resulting from carelessness in doing the work entrusted to a competent building wrecker? Work not ordinarily hazardous is, when done by the unskillful and careless, much more dangerous than is work ordinarily classed as "dangerous" when done by the skillful and careful. How can the public welfare be advanced by an attempt on the part of the law to draw a distinction between "inherently dangerous" and nondangerous work so that the owner of premises where dangerous work is being done is held liable for the negligent acts of his independent contractor while the owner of the premises where the nondangerous work is being done is held to be not liable? No such distinction is recognized in this jurisdiction.

It is the law in Pennsylvania "that a person, natural or artificial, is not liable for the acts or negligence of another unless the relation of master and servant or principal and agent exists between them; and that when an injury is done by a person exercising an independent

employment, the party employing him is not responsible to the person injured": Allen v. Willard, 57 Pa. 374, 381. This doctrine has regard to cases where the purpose of the contract is entirely lawful, and where the owner of the property upon which the contract is to be executed can lawfully commit its performance to others. Nor does the principle extend to cases where the employer of the contractor has not relinquished his control over the work to be done and still continues liable for his duty to others in respect to it: Ibid.

"Defendants not personally interfering or giving directions respecting the progress of a work, but contracting with a third person to do it, are not responsible for a wrongful act done, or negligence in the performance of the contract if the act agreed to be done is legal": Painter v. Mayor of Pittsburgh, 46 Pa. 213, 221.

The very phrase "independent contractor" implies that the contractor is independent in the manner of doing the work contracted for. How can the other party control the contractor who is engaged to do the work and who presumably knows more about doing it than the man who by contract authorized him to do it? Responsibility goes with authority.

In plaintiff's statement it is pleaded that as a result of the fire and the consequent dangerous condition of the walls of defendants' building, it became and was the duty of defendants to then and there take such action, with regard to the walls, as would prevent damage or injury to the property and buildings of the plaintiff. We think that if the defendants exercised due care in securing a competent contractor to do this work, they discharged that duty. If the defendants had entrusted the work to a contractor who was known to be disqualified for the task assigned him or if they did not exercise due care in selecting a contractor and if such breach of duty had been pleaded and the evidence supported it, we would have a situation in which the defendants might be liable to the plaintiff for the damages the latter sus-

tained. "An employer may be held liable on the ground of negligence in selecting a contractor who does not possess that measure of skill and experience which the stipulated work demands": Note, 66 L. R. A., page 944.

"Both on principle and authority it is manifest that a defendant cannot be held liable on the ground of his having employed an incompetent or otherwise unsuitable contractor, unless it also appears that he either knew, or by the exercise of reasonable care might have ascertained, that the contractor was not properly qualified to undertake the work. Whether due diligence has been used in making inquiries is determined from a consideration of the evidence submitted": Berg v. Parsons, (1895) 84 Hun. 60, 31 N. Y. Supp. 1091.

"The mere fact that the contractor was negligent in respect to the work in question affords no presumption that the employer was guilty of negligence in having engaged him. An employer has the right to place reliance upon the supposed qualifications and good character of the contractor, and is not bound to anticipate misconduct on his part": Hawke v. Brown, (1898) 28 App. Div. 37, 50 N. Y. Supp. 1032.

"An employer cannot relieve himself from liability by giving the contract to one who is known to be incompetent or negligent": Brannock v. Elmore, (1892) 114 Mo. 55, 21 S. W. 451.

In Ware v. St. Paul Water Co., (1870) 2 Abb. (U. S.) 261, Fed Cas. No. 17,172, it was assumed that an employer is liable for the negligence of an incompetent or unsuitable contractor.

"It is often laid down as one of the conditions required to relieve the owner from liability for the negligent acts of an independent contractor employed by him, that he shall exercise due care to secure a competent contractor for the work": 14 R. C. L., section 18, page 80.

No one contends that the defendants were responsible for the fire that resulted in leaving two menacing brick walls overhanging plaintiff's property. No one contends

that defendants were better qualified to take down these walls than the man to whom they entrusted that work. No one contends that defendants failed to act diligently in taking steps to have the walls removed. It is not pleaded that defendants entrusted the work to a man who was known to be incompetent or without exercising due care in securing a competent contractor to do the work. Where then was the breach of duty on defendants' part? We find none. The injury to plaintiff resulted from the negligence of the independent contractor—not from the negligence of defendants' agents or servants or other persons over whom defendants had any control after the lawful contract was entered into.

The case of Fitzpatrick v. Penfield, 267 Pa. 564, stressed by appellant, is clearly distinguishable from the case before us. There plaintiff charged defendant with negligence in permitting a dangerous wall to stand. Here defendants did just the contrary. They took steps promptly to have a dangerous wall removed. In the Fitzpatrick Case this court said: "The jury found the wall to be defective and unsafe to remain standing without being properly braced or guarded; in so finding it declared that defendant had not performed her obligation of ordinary care under the circumstances." Even though in that case the owner of the walls had previously employed a contractor to tear down or remove such walls or portions thereof as were dangerous and though an experienced builder engaged by her had declared that the wall left standing [but which subsequently fell with resulting fatalities] was safe and sound, it was held that fact was not conclusive on the question whether or not defendant was negligent in permitting the wall to stand. In that case the wall had been left standing a year after a fire. If in the case before us the defendants had permitted the walls in question to stand a considerable period after the fire and they had collapsed and inflicted injury, we would have a case analagous to the case appellant cites. One cannot as a

matter of law escape liability for injuries caused by a dangerous wall left standing by him for an unreasonable period by proving that some supposedly competent person assured him it was safe anymore than the owner of a dangerous animal that causes injury to a person can as a matter of law escape liability by proving that some supposedly competent person assured him the animal was harmless. Whether or not one who owns a wall that falls and does damage is negligent in allowing that wall to stand a considerable period of time after it gives some appearance of being dangerous, is negligent is a question of fact for the jury and that is what the case cited by appellant held. In the case before us the question is one of law and is whether or not the owner of a wall who acts promptly in engaging a presumably competent contractor to take it down is responsible for the negligence of the contractor in doing the work contracted for. We answer that question in the negative.

The case of Foehr v. N. Y. Short Line R. R. Co., 40 Pa. Superior Ct. 7, cited by appellant, is not in point, for in the case before us (unlike the case cited), the injury resulted not from the doing of the work but from the careless manner of doing it. The razing of walls is not inevitably injurious to others. When the work of razing walls is performed skillfully, it can be accomplished without injury to life or limb. If the fact were otherwise, few walls would ever be razed.

If in the contract between the defendant and Kimbal, the former had reserved to himself the control of the work or had so specified the means and manner of its performance as to leave in Kimbal little or no choice in the selection of the methods to be used to reach the result desired, Kimbal would not have been an independent contractor but a mere servant or agent (See 14 R. C. L., page 68, section 4; Harrison v. Collins, 86 Pa. 153), but such is not the situation here, for it appears to be conceded by counsel for plaintiff that Kimbal was in fact and in law an independent contractor who had com-

plete charge and control of the performance of the work assigned him free from his employer's interference or direction. He was obedient to the will of the defendant only as to the result of the work and not as to the means of its accomplishment.

The judgment of the Superior Court is affirmed.