566 A.2d 1249

Michael EGAN and Susan Egan, H/W

v.

ATLANTIC RICHFIELD COMPANY, Llewelyn–Davies Associates, Davis Brody & Associates, and Dynamit Nobel of America, Inc.

v.

WARREN–EHRET–LINCK COMPANY and Turner Construction Company.

Appeal of WARREN–EHRET–LINCK COMPANY. (Two Cases)

Michael EGAN and Susan Egan, H/W

v.

TURNER CONSTRUCTION COMPANY.

Superior Court of Pennsylvania.

Argued Sept. 19, 1989.

Filed Dec. 6, 1989.

G. Wayne Renneisen, Philadelphia, for Warren–Ehret–Linck Co., appellant.

James L. McKenna, Philadelphia, for Turner Const., appellee.

Before TAMILIA, KELLY and CERCONE, JJ.

CERCONE, Judge:

This appeal involves two civil actions which were consolidated prior to trial in the Court of Common Pleas of Philadelphia County. The appeal is from an order entered October 31, 1988, and docketed November 16, 1988, denying the motion of appellant, Warren–Ehret–Linck Company (WELCO), for post-trial relief. This order was reduced to judgment in favor of appellees Atlantic Richfield Company and Turner Construction Company (Turner) on November 22, 1988.[1] On November 30, 1988, appellant filed this timely appeal. We affirm.

1. The entry of judgment is reflected in the reproduced record.

The facts of the case as set forth by the lower court are as follows:

The Atlantic Richfield Company (defendant, hereinafter ARCO) is the owner of the Chemical Research and Engineering Center located in Newton Square, Pennsylvania. In January, 1978, ARCO entered a contract with Turner (also defendant) to become the general contractor for construction of the ARCO Center. In April, 1979, Turner entered into a contract with Warren–Ehret–Linck Company (additional defendant, hereinafter WELCO), the subcontractor to perform roofing work. Egan, the plaintiff, was an employee of WELCO who did roofing work under the subcontract.

The terms of the contract between Turner and WELCO included an indemnity clause which reads in part:

The subcontractor agrees to indemnify and save harmless Turner, its officers, agents, servants and employees from and against any and all such claims, and further from and against any and all loss, cost, expense, liability, damage or injury ... the Subcontractor agrees to and does hereby assume, on behalf of Turner, its officers, agents, servants and employees, the defense of any action at law or in equity which may be brought against Turner ...

The agreement also required WELCO to obtain, at its own expense, insurance, including bodily injury and property damage.

Michael Egan, while working on the roof of the ARCO Research Center, fell through a skylight 39 feet and sustained injuries.

The plaintiffs brought suit against ARCO, Turner and others. Turner joined WELCO as an additional defendant based on the indemnity clause. On April 7, 1987, notwithstanding its contention that the indemnity agreement was valid, WELCO paid $210,000.00 in insurance proceeds to the plaintiffs.

The present action was filed to determine the enforceability of the indemnity provision under which WELCO

must assume the entire liability for the injuries Egan sustained as a result of the employment-related accident described above. The parties agreed that the payment represented a fair settlement for the injuries sustained, and have submitted the above issues to this Court as a question of law alone.

On appeal, appellant raises the following issues: (1) whether the indemnity provision in the contract between Turner and WELCO is void and unenforceable because the provision would allow Turner to exculpate itself from liability for violation of a federal regulation relating to safety at construction sites; and (2) whether the indemnity provision in the contract between Turner and WELCO is void and unenforceable as a contract of adhesion.

Our standard of review on appeal from a judgment entered after a non-jury trial is limited to a determination of whether the trial court's findings are supported by competent evidence and whether the trial court committed an error of law. *Brenna v. Nationwide Insurance Company*, 294 Pa.Super. 564, 567, 440 A.2d 609, 611 (1982). "[I]n reviewing the findings of the trial judge, the victorious party is entitled to have the evidence viewed in the light most favorable to him and all the evidence and proper inferences favorable to the successful party must be taken as true and all unfavorable inferences rejected." *Id.* citing *Courts v. Campbell*, 245 Pa.Super. 326, 369 A.2d 425 (1976).

We have thoroughly reviewed the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court and find no merit to the issues raised on appeal. We rely on the opinion of the lower court in this regard and in addition, set forth the following reasoning.

■ WELCO has argued that Turner, by virtue of the indemnity provisions in its contract with WELCO, effectively circumvented its responsibility for compliance with federal regulation 29 C.F.R. § 1926.105. This, appellant asserts, is contrary to public policy and the indemnity provision is therefore unenforceable.

We find this argument unpersuasive. As appellees have pointed out, the regulations which appellant argues have been circumvented by the indemnity provision require joint responsibility for compliance with the regulations on the part of both contractor and subcontractor. Specifically, the regulations provide:

*§ 1926.16 Rules of Construction*

(a) The prime contractor and any subcontractors may make their own arrangements with respect to obligations which might be more appropriately treated on a jobsite basis rather than individually ... In no case shall the prime contractor be relieved of overall responsibility for compliance with the requirements of this part for all work to be performed under the contract.

(b) By contracting for full performance of a contract subject to section 107 of the Act, the prime contractor assumes all obligations prescribed as employer obligations under the standards contained in this part, whether or not he subcontracts any part of the work.

(c) To the extent that a subcontractor of any tier agrees to perform any part of the contract, he also assumes responsibility for complying with the standards in this part with respect to that part. Thus, the prime contractor assumes the entire responsibility under the contract and the subcontractor assumes responsibility with respect to his portion of the work. With respect to subcontracted work, the prime contractor and any subcontractor or subcontractors shall be deemed to have joint responsibility.

(d) Where joint responsibility exists, both the prime contractor and his subcontractor or subcontractors, regardless of tier, shall be considered subject to the enforcement provisions of the Act.

29 C.F.R. § 1926.16.

The rules of construction contained in 29 C.F.R. § 1926.16 are concerned with the regulations applying the construction safety and health provisions of section 107 of the Contract Work Hours and Safety Standards Act. 40 U.S.

C.A. § 333. Section 107 requires as a condition of each contract coming within the purview of the Act that "no contractor or subcontractor contracting for any part of the contract work shall require any laborer or mechanic employed in the performance of the contract to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his health or safety, as determined under construction safety and health standards promulgated by the Secretary [of Labor] by regulation." 29 C.F.R. 1926.1; 1926.10. Section 1926.105, upon which appellant relies, is one of the safety standards promulgated for enforcement of section 107.

Since the regulation at 29 C.F.R. § 1926.16 provides for joint responsibility for compliance with the safety regulations, the argument that Turner could circumvent its liability for violation thereof is without merit. Clearly, under the regulations, the delegation of a portion of the work to a subcontractor did not relieve Turner, the contractor, of its responsibility for compliance. We therefore agree with the lower court's assessment that "Turner has not been relieved of any responsibility, and no person has been denied the right to recover for failure to adhere to such regulation [§ 1926.105]. Turner remains liable under this regulation, although its obligation to compensate anyone injured by reason of such violation may be assumed by the indemnitor (WELCO)."

Under § 1926.10, the incentive remained for Turner to comply with § 1926.105, or be subject to the enforcement provisions of the federal Act. Therefore, there is no merit to appellant's argument that public policy is circumvented by the indemnity provision. The provision is more properly interpreted, as did the lower court, as "little more than insurance protection...." As the court stated in *Westinghouse Electric Co. v. Murphy, Inc.*, 425 Pa. 166, 173 n. 5, 228 A.2d 656, 660 n. 5 (1967), "[a] contract indemnifying one against his own negligence is not necessarily against public policy ... such contracts are useful to parties involved in

construction and similar activities as a means of allocating the responsibility for obtaining insurance." *Id.*

█ The argument that the indemnity provision is a contract of adhesion is also without merit. Contracts of adhesion involve agreements between parties who are not of equal bargaining power. *Bishop v. Washington,* 331 Pa.Super. 387, 480 A.2d 1088 (1984). However, a disparity of bargaining power is not sufficient, by itself, to render a contract invalid. *Id.,* 331 Pa.Superior Ct. at 400, 480 A.2d at 1094; *Witmer v. Exxon Corp.,* 495 Pa. 540, 434 A.2d 1222 (1981).

Contracts of adhesion are often found in the context of insurance contracts. *Bishop v. Washington, supra,* 331 Pa.Superior Ct. at 400, 480 A.2d at 1094. In such a case, a court may find an individual insured in an inferior bargaining position to the insurance company which issued the policy. The commercial or individual status of the parties is significant in determining whether the court will find a contract of adhesion. *Banks Tower Communications, Ltd. v. Home Insurance Co.,* 590 F.Supp. 1038, 1042 (E.D. Pa.1984). Another factor of significance is awareness on the part of the assertedly weaker party of the contract's specific terms. *Id.; Bishop v. Washington, supra,* 331 Pa.Superior Ct. at 400, 480 A.2d at 1094; Ehrenzweig, *Adhesion Contracts in the Conflicts of Laws,* 53 Colum. L.Rev. 1072, 1075 (1953). The court may also consider whether the exculpatory clause itself serves a reasonable business purpose or imposes an unreasonable financial liability on a person ill-equipped to assume such a burden. *Spallone v. Spiegel,* 239 Pa.Super. 586, 600, 362 A.2d 263, 271 (1976) (opinion by Spaeth, J.).

In the instant case, the contract was between two commercial parties. Appellant has not contended nor pointed to any evidence of record that it was unaware of the terms of the indemnity provision at the time it entered into the contract. In addition, as we have previously indicated, indemnity provisions of this type in construction contracts are frequently relied upon by the parties as a means of allocating the responsibility of obtaining insurance. *Westinghouse Electric Co. v. Murphy, Inc., supra.* Thus, they

purportedly serve a reasonable business purpose. In addition, WELCO was required to, and did, obtain the necessary insurance to cover its liability under the terms of the contract. This fact points not only to WELCO's awareness of the contract's requirements, but also indicates that the settlement to plaintiff Michael Egan did not impose a financial burden upon a party ill-equipped to assume the burden.

It is well established that where parties, *sui juris*, enter into an unambiguous agreement, with knowledge of the facts, the courts will not relieve them of their contractual obligations because of the questionable wisdom of the bargain. *McRoberts v. Burns*, 371 Pa. 129, 88 A.2d 741 (1952); *Mowry v. McWherter*, 365 Pa. 232, 74 A.2d 154 (1950). While making no comment on the wisdom of the bargain to appellant, it is evident to this court that the indemnity provision herein was unambiguous and that appellant had knowledge of its terms and ramifications. In addition, for the reasons stated by the lower court as well as in this opinion, the agreement did not constitute a contract of adhesion. Thus, we find no error in the lower court's denial of appellant's post-trial motions and entry of judgment against appellant.

Order of October 31, 1988 reduced to judgment on November 22, 1988 affirmed.