590 A.2d 1273

Richard L. WOODBURN and Beatrice Woodburn, His Wife

v.

CONSOLIDATION COAL COMPANY; Industrial Resources, Inc., Mountaineer Resources Inc., Mohawk Construction & Supply Company, Inc., Plasteel Products Corporation, Hi–Lo Powered Scaffolding, Inc.

v.

PANTHER CONSTRUCTION COMPANY, a Corporation, James Gordon, Sr., James Gordon, Jr., and Jeffrey Gordon, Individually and t/d/b/a Panther Construction Company (Two Cases).

Appeal of MOHAWK CONSTRUCTION & SUPPLY COMPANY, INC.

Appeal of INDUSTRIAL RESOURCES, INC.

Superior Court of Pennsylvania.

Argued Jan. 17, 1991.

Filed May 3, 1991.

Petition for Allowance of Appeal
Denied Oct. 17, 1991.

Avrum Levicoff, Pittsburgh, for Mohawk Const., appellant (at 854) and appellee (at 1038).

John Fessler, Erie, for Indust. Resources, appellant (at 1038) and Thomas M. Lent, Erie, for Indust. Resources, appellee (at 854).

Before ROWLEY, President Judge, and DEL SOLE and MONTGOMERY, JJ.

DEL SOLE, Judge:

Appellee, Richard Woodburn, a sheeter employed by Western Avella Contracting Inc. (WACI), suffered severe injuries in a construction accident at a coal preparation plant owned by Consolidation Coal Company (Consol). He had been installing sheet metal siding approximately 80 feet

off the ground on a scaffold supported by two power stirrups, one of which failed causing the scaffolding to fail. Mr. Woodburn fell to the ground, sustaining serious and permanent injuries.

Consol had hired Industrial Resources, Inc. (Industrial) to act as general contractor for the project. Industrial subcontracted the steel erection phase of the job to Mountaineer Resources, Inc., and further subcontracted with Mohawk Construction and Supply Company (Mohawk) to supply and install all of the sheeting. Mohawk supplied the sheeting and in turn subcontracted the installation of the sheeting to WACI. The defective stirrups had been supplied by Plasteel Products Corporation (Plasteel) and manufactured by Hi–Lo Scaffolding, Inc. (Hi–Lo).

Appellee and his wife sued the above parties, asserting various causes of action for negligence and strict liability.[1] All of the defendants asserted crossclaims for contribution. Consol asserted claims for indemnification against Industrial and Mohawk under their respective construction contracts, and Industrial asserted a claim for indemnification under its subcontract with Mohawk. Following a jury trial, Appellee and his wife received a verdict of $8,000,000.00. The jury found Industrial, Mohawk and Plasteel to be negligent and apportioned their negligence as 45%, 35%, and 20% respectively. Prior to the commencement of the trial, Plasteel settled with the Woodburn's under a joint tortfeasor's type release patterned after the decision of the Pennsylvania Supreme Court in *Charles v. Giant Eagle Markets, Inc.*, 513 Pa. 474, 522 A.2d 1 (1987).

Industrial and Mohawk filed timely motions for post-trial relief. In addition, both parties submitted briefs on Industrial's contractual indemnity claim against Mohawk. The trial court denied the motions for post trial relief and

1. The Woodburns had also filed a separate cause of action in the Court of Common Pleas of Allegheny County against other parties who were also joined as additional defendants in the instant action. After the actions were consolidated, the additional defendants were either dismissed prior to trial or were granted non-suits. Industrial has not appealed these rulings.

ordered that Mohawk was contractually obligated to indemnify Industrial. Mohawk filed an appeal from that part of the trial court's order and Industrial filed an appeal of its own raising numerous errors. For the purpose of this appeal, the cases have been consolidated.

We think it prudent to note the action has been settled between the Woodburns and those defendants found liable. The suit before us continues only to determine Industrial's right to indemnification from Mohawk. During the pendency of these appeals, Mohawk and the Woodburns entered into a release and settlement agreement, wherein Mohawk paid $6.4 million to settle the claims against it, its insurer, and all other parties to the litigation except Industrial. Mohawk preserved the right to appeal the determination that it is obligated to indemnify Industrial. The agreement provides that, in the event of a final determination affirming the award of indemnity to Industrial, the claims of the Woodburns against Industrial would also be released. However, in the event of a final determination that Mohawk is not obligated to indemnify Industrial, then the Appellees have assigned to Mohawk all of their right to recover on their judgment against Industrial.

Appeal No. 00854 PGH 1990

■ In this appeal, Mohawk contends that the language of the indemnification clause in the contract between Mohawk and Industrial is insufficient to impose an obligation upon Mohawk to indemnify Industrial for liability caused by Industrial's own negligence. The relevant indemnification clause contained in the portion of the agreement between Mohawk and Industrial states as follows:

ARTICLE 8—INDEPENDENT CONTRACTORS: INDEMNIFICATION OF CORPORATION: SUBCONTRACTOR agrees that in the performance of the work under this construction agreement, it shall act as an independent contractor, and all of its agents and employees, and the agent and employee of its subcontractors, shall be subject solely to the control, supervision and authority of SUBCONTRACTOR or its subcontractors—

the right of inspection being reserved herein by INDUS-TRIAL solely to determine whether the work is done in accordance with the contract documents and to evaluate completed works in connection with payments. SUB-CONTRACTOR acknowledges that it has investigated the site where the work will be done under the construction agreement and is satisfied with all the local conditions pertinent to the work. SUBCONTRACTOR shall use extreme care, that is, care beyond that ordinarily required, in the performance of its work hereunder and shall adequately protect the materials, the work, persons working in the premises, the general public and adjacent property and SUBCONTRACTOR shall assume all risks of the premises and shall indemnify and hold harmless Consol and Industrial, their directors, officers and employees, from and against any and all claims and/or demands including all costs and expenses, including attorneys fees, for injury or alleged injury or death to persons, or damage to property, caused by, arising from, incidental to, connected with or growing out of the work to be performed under this construction agreement, including, but not limited to, any work to be performed by a subcontractor or agent of SUBCONTRACTOR; provided, however, that such indemnification and hold harmless shall not apply to claims for injury or alleged injury or death to persons, or damage to property (other than loss of, damage to, or loss of use of SUBCONTRACTOR'S property) caused by the sole negligence of Consol or INDUSTRIAL.

Mohawk specifically argues that the pertinent indemnity language is silent on whether it has a duty to indemnify Industrial for losses caused by the concurrent negligence of Mohawk and Industrial. Industrial claims that the last clause of the applicable provision precludes indemnification for injuries caused by Industrial's sole negligence, and therefore the negative inference to be drawn is that any injuries occurring by less than the sole fault of Industrial

fall within the scope of the indemnification clause. We agree with the position advanced by Industrial.

The question of whether an indemnity contract requires a contractor to indemnify an owner against the latter's own negligence was first dealt with by our Supreme Court in *Perry v. Payne*, 217 Pa. 252, 66 A. 553 (1907). That case involved an indemnification provision in a contract which required the contractor to indemnify the owner "from all loss, costs or expense . . . arising from accidents to mechanics or laborers employed in the construction of said work. . . ." An employee of the subcontractor was killed due to the owners negligence. After the owner paid a judgment to the estate, he attempted to recover from the contractor based on the indemnification clause. The court, wanting to avoid situations where indemnitors would act as insurers, concluded the general wording of the clause would not be construed to mean an indemnitor must indemnify the indemnitee for losses caused by the indemnitee's own negligence. Lacking in that contract was a clause similar to the one involved in the present case that would relieve the contractor's obligation to indemnify when injuries were caused by the sole negligence of the owner.

The indemnification issue was addressed again in *Pittsburgh Steel Company v. Patterson, Emerson–Comstock, Inc.*, 404 Pa. 53, 171 A.2d 185 (1961). Pittsburgh Steel hired Patterson as a general contractor to construct a mill on property it owned. After one of Patterson's subcontractor's employees was injured, it was determined that both Pittsburgh Steel and Patterson were negligent. Pittsburgh Steel settled and sought indemnification from Patterson pursuant to their contract. The court denied indemnification, finding that the provision was ambiguous as to whether the indemnity clause covered the negligence of Pittsburgh Steel. Again this contract contained no "sole negligence" clause.

In 1971, this court addressed the situation involving a contract containing general indemnification language as well as a sole negligence clause. In *Babcock & Wilcox*

*Company v. Fischbach & Moore, Inc.*, 218 Pa.Super. 324, 280 A.2d 582 (1971), Fischbach & Moore's (F & M) agreement to indemnify Babcock & Wilcox (B & W), specifically excluded situations where injuries were due wholly to the negligence of B & W. After an injury resulted from the combined negligence of the parties, B & W sought indemnification from F & M. This court concluded there was no ambiguity in the terms of the agreement and found that F & M had agreed to indemnify B & W from claims where B & W was partly at fault but not from claims arising wholly from the negligence of B & W.

Our Supreme Court has recently considered a case involving a contract which contained an indemnity clause, but lacked a sole negligence provision. In *Ruzzi v. Butler Petroleum Company*, Pa., 588 A.2d 1 (1991). A gasoline station operator entered into an agreement with Butler Petroleum Company to refurbish the station. The agreement contained an indemnity clause, wherein the operator agreed to indemnify Butler Petroleum from liability for damage caused during the reconstruction. The contract was without a sole negligence provision. After an employee was injured and a suit was initiated, Butler Petroleum was found to have been 84% negligent. On appeal Butler Petroleum queried whether the indemnity clause in the agreement was legally binding. The court stated that the law has been well settled in this Commonwealth for 87 years that if parties intended to include within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's own negligence, they must do so in clear and unequivocal language. The court went onto say that because *Perry* was the law when the indemnification agreement was entered into, we must assume the parties knew that the law would not recognize as effective their agreement concerning the negligent acts of the indemnitee (Butler Petroleum) unless an express stipulation concerning negligence was included in the document. As a result the court concluded that the only intent to be gleaned from the

agreement was that the parties did not intend to indemnify for acts of the indemnitee's own negligence.

In the case at hand, we find that Industrial and Mohawk expressly agreed, by the terms of their contract, and intended, that Mohawk would indemnify Industrial against any and all claims arising from the work to be conducted under the contract, except for any injuries caused by the "sole negligence" of Industrial. Since a jury found Industrial to be less than 100% negligent, Mohawk is contractually bound to indemnify Industrial.

■ Mohawk next questions whether the application of the indemnification clause, which allows Industrial to be indemnified for liability based upon violations of statutory and regulatory safety provisions contravenes public policy. We find that it does not.

This court recently addressed this issue in *Fulmer v. Duquesne Light Co.*, 374 Pa.Super. 537, 543 A.2d 1100 (1988). In that case, Fulmer an employee of Rust Chimney, was injured while working on property owned by Duquesne Light. Rust Chimney, a subcontractor had agreed to indemnify Duquesne Light for any injuries occurring on the job unless the injury was the result of Duquesne Light's own negligence. Rust Chimney argues that the indemnity clause was invalid and against public policy because Duquesne Light was attempting to shift their liability for their violations of the state safety standards. The Superior Court stated:

> The indemnification clause in the agreement between Duquesne Light and Rust Chimney does not require Rust Chimney to indemnify Duquesne Light or make contribution unless it was negligent. It is not liable to make indemnification if Duquesne light was solely negligent in causing Fulmer's injuries. Moreover, the agreement does not have the effect of defeating plaintiff's recovery, ... indemnification agreement in the instant case neither shifted liability for a violation of statute nor diminished the statutory safeguards which Fulmer was entitled to receive. The agreement did not violate public policy.

*Id.,* 374 Pa.Superior Ct. at 546, 543 A.2d at 1104. We find that the reasoning of that case applies equally to the case sub judice. Mohawk had no duty to indemnify Industrial if, Industrial, through its own negligence was found to have been the sole cause of injuries suffered by Appellee. Industrial remained liable for its own negligence if that negligence was the singular cause of the injury. Furthermore, the agreement does not vitiate Woodburn's right to recover since he could claim payment from any party responsible, and is not bound by any indemnification agreements.

The public policy argument asserted by Mohawk was likewise considered in *Egan v. Atlantic Richfield Company,* 389 Pa.Super. 290, 566 A.2d 1249 (1990). Our court held that since the Federal regulation involved in that case required joint responsibility of the indemnitor and the indemnitee for compliance with the safety regulations, public policy was not circumvented. In the present case, Mohawk contends that to enforce the indemnity provision would relieve Industrial from their obligation to comply with Federal safety regulations. We disagree. Industrial remains liable for compliance with Federal regulations. Its obligation to compensate those injured as a result of safety violations is shared by Mohawk, only if Mohawk was also negligent. Despite the indemnity clause, under the terms of the agreement, Industrial would be liable for any injuries caused by its sole negligence. This furnished Industrial with ample motivation to comply with the federal safety regulations.

We also point out that for a party responsible with complying with safety regulations, to ignore those regulations because of an indemnity clause in a contract is very risky. That clause only has meaning if the indemnitor has the assets to satisfy its agreed indemnification. In these cases, the plaintiff can seek collection of his entire judgment against any party found liable. The indemnitee may be required to pay the full judgment and, if the indemnitor is financially weak, not be compensated. This is also incentive to require compliance with federal regulations. Ac-

cordingly, we hold that the indemnity clause contained in the agreement between Mohawk and Industrial was not violative of public policy.

Appeal No. 1038 PGH 1990

Due to our determination of the indemnity issue, we find it unnecessary to reach the issues raised by Industrial. These issues are moot because of the settlement by Mohawk of the plaintiffs' claims.

Judgment affirmed.