771 A.2d 1238

Harold LEONARD and Angela Leonard, His Wife, Appellants,

v.

COMMONWEALTH of Pennsylvania, Department of Transportation; and Perini, Corp.; and Peter Kiewit and Son Company; and Kiewit Eastern Co., incorrectly identified as Kiewit Eastern Corporation and Kiewit/Perini, A Joint Venture; and High Steel Structures, Inc.; and Cornell and Company; and Construction Methods and Coordination, Inc. (CMC), Appellees.

Supreme Court of Pennsylvania.

Argued Dec. 4, 2000.

Decided May 22, 2001.

102

Nigro, J., filed a dissenting opinion in which Saylor, J., joined.

Louis S. Fine, Honesdale, Louis S. Perez, for Harold & Angela Leonard.

Laurence M. Kelly, Montrose, for Amicus–PA trial Lawyers Assn.

Victoria M. Komarnicki, Philadelphia, for PennDOT.

Arthur B. Keppel, Edward J. David, Philadelphia, for Cornell & Company.

John Kent, Anne M. Manero, Philadelphia, for High Steel Structures, Inc.

Jeffrey German, Philadelphia, for Kiewitt Eastern Co.

Before FLAHERTY, C.J., ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, JJ.

## *OPINION*

FLAHERTY, Chief Justice.

This is an appeal by allowance from an order of Commonwealth Court which affirmed an order of the Court of Common Pleas of Delaware County denying a motion to vacate compulsory nonsuits and directed verdicts in a personal injury action. The action sought compensation for injuries that Harold Leonard, appellant, sustained while employed as an iron worker at a bridge construction site. Appellees, the defendants in this action, are the Pennsylvania Department of Transportation (PennDOT) and various contractors and subcontractors who were responsible for construction of the bridge.

In 1988, PennDOT entered into a contract with Kiewit Eastern Company and Perini Corporation (collectively, Kiewit/Perini) for the improvement of Interstate 476 in Delaware County. Kiewit/Perini, as general contractor, agreed to demolish existing structures and rebuild various bridges along

the highway. Kiewit/Perini entered a subcontract with High Steel Structures, Inc. (High Steel) to fabricate and erect steel for the bridges. In turn, High Steel subcontracted with Cornell and Company (Cornell) for erection of all of the steel. In addition, PennDOT contracted with Construction Methods and Coordination, Inc. (CMC) for certain supplemental inspection and safety monitoring services.

While working on the Chester Road Bridge, Leonard, an employee of Cornell, fell approximately forty feet to the ground. Leonard sustained injuries to his back and right elbow. There was no safety net below the work area. Although Leonard was wearing a safety belt, the belt was not connected to any safety device. There was no static safety line in place. There was, however, an inspector's handrail on the steel girder from which Leonard fell, but he had not attached himself to it.

A negligence action against PennDOT, Kiewit/Perini, High Steel, Cornell, and CMC ensued. Leonard averred that his injuries resulted from dangerous conditions at the work site that were attributable to inadequate safety equipment and procedures. It was asserted that each defendant had a duty to provide a safe workplace, and that each negligently breached that duty. At trial, compulsory nonsuits or directed verdicts were granted in favor of all defendants.

In granting the compulsory nonsuits and directed verdicts, the trial court reasoned that sovereign immunity protected PennDOT from liability; that Cornell, as Leonard's employer, was responsible for work-related injuries under the Workmen's Compensation Act, 77 P.S. § 1 et seq. and therefore not subject to negligence claims; that CMC was contractually obligated to provide supplemental safety inspections wherever PennDOT directed, but that PennDOT had not asked CMC to inspect the structural steel work area of the bridge, and, hence, that CMC had no duty there. Further, with regard to Kiewit/Perini and High Steel, the court reasoned that such parties had no involvement in erection of the steel, that they had no personnel assigned to the site, and that they exercised no control over Leonard or his working conditions because

such work, including compliance with safety requirements, had been contractually delegated to Cornell. It was held, therefore, that Kiewit/Perini and High Steel had no duty as to safety of the work site.

On appeal, Commonwealth Court affirmed, applying the well established principle that one who engages an independent contractor is not vicariously liable for the negligence of that contractor. *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 150–54, 189 A.2d 271, 277–79 (1963). It is because an independent contractor is not subject to control by the one hiring him that there is no basis to hold the latter party liable for his acts. *Id.; Brletich v. United States Steel Corp.*, 445 Pa. 525, 530–32, 285 A.2d 133, 135–36 (1971) (no liability for negligent acts of an independent contractor whose work is not subject to control). Thus, inasmuch as Kiewit/Perini and High Steel had no presence or involvement at the work site and maintained no control over the manner in which work was performed by Cornell, they were deemed not responsible for any injuries caused to Leonard by Cornell's failure to maintain a safe work site.

We granted allowance of appeal limited to the questions of whether a general contractor or subcontractor who was not "present" at the work site may nevertheless be in "control" of the work site pursuant to contract or law so as to have a duty to make the site safe, and whether such a contractor or subcontractor may delegate such a duty to a subordinate subcontractor. Hence, our review focuses on Commonwealth Court's rationale that Kiewit/Perini and High Steel had no duty to Leonard, in that they had no actual involvement in erection of the steel, they had no presence or control with respect to the work site, they had no control over the manner in which Leonard performed his job, and they had contractually delegated all safety responsibility and control over the work site to Cornell.

The decision of Commonwealth Court is in accord with established law that a contractor is not liable for injuries resulting from work entrusted to a subcontractor. As we

stated in *Duffy v. Peterson*, 386 Pa. 533, 539, 126 A.2d 413, 416 (1956),

> Comment d under Section 384 [Restatement, Torts] states: "A possessor of land may put a number of persons severally in charge of the particular portions of the work of erecting a structure or creating any other condition upon the land. Again, a *general contractor employed to do the whole of the work may, by the authority of his employer, sublet particular parts of the work to subcontractors.* In such a case, the rule stated in this Section applies to *subject the particular contractor or subcontractor to liability for only such harm as is done by the particular work entrusted to him.*"

(Emphasis added). See also *McKenzie v. Cost Bros., Inc.*, 487 Pa. 303, 307–08, 409 A.2d 362, 364 (1979) (noting that Pennsylvania has adopted the Restatement (Second) of Torts, § 384).[1] Thus, Cornell, as the subcontractor entrusted with the work of erecting steel, would normally be the only party liable for injuries occurring in that pursuit.

Leonard contends, however, that Kiewit/Perini and High Steel had regulatory and contractual duties to provide a safe workplace for employees of subcontractors, and that such duties could not be avoided through contractual provisions delegating responsibility to an independent subcontractor, i.e., Cornell. Specifically, it is asserted that Kiewit/Perini and High Steel were obligated to secure compliance with various Occupational Safety and Health Administration (OSHA) regulations governing work site safety, particularly those dealing with safety lines and nets. See 29 C.F.R. § 1926.104 (safety lines); 29 C.F.R. § 1926.105 (safety nets). Whether there were in fact any violations of OSHA regulations and whether Leonard's injuries were proximately caused thereby are matters that are disputed by the parties.

1. The Restatement (Second) of Torts, § 384 states:
   One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge.

■   To place responsibility on both Kiewit/Perini and High Steel, Leonard relies on 29 C.F.R. § 1926.10(a), which provides that "no contractor or subcontractor contracting for any part of the contract work shall require any laborer or mechanic employed in the performance of the contract to work in surroundings or under working conditions which are . . . hazardous, or dangerous to his health or safety. . . ." Leonard further cites 29 C.F.R. § 1926.16(c), which states, "[T]he prime contractor assumes the entire responsibility under the contract and the subcontractor assumes responsibility with respect to his portion of the work. With respect to subcontracted work, the *prime contractor and any subcontractor or subcontractors shall be deemed to have joint responsibility.*" (Emphasis added). In holding that these provisions do not establish liability of a contractor for injuries to subcontractors' employees, Commonwealth Court concluded that the provisions do not deal with the assignment of liability among contractors. Rather, the court held that the regulations establish which parties are subject to OSHA enforcement provisions. We agree. The regulations cited by Leonard expressly state that they concern the scope of enforcement of OSHA requirements. In particular, 29 C.F.R. § 1926.16(d) states: "Where joint responsibility exists, both the prime contractor and his subcontractor or subcontractors, regardless of tier, shall be considered subject to the *enforcement provisions* of the Act." (Emphasis added). The fact that OSHA requirements were applicable to the project does not, however, mean that Kiewit/Perini or High Steel had a presence at the site or control over the work done by Cornell. Absent those elements, liability does not attach.[2]

2.   Several lower court decisions are cited by Leonard for the proposition that a contractor bears liability for injuries caused by OSHA violations that occur during the course of a subcontractor's work. E.g., *Donaldson v. Department of Transportation,* 141 Pa.Cmwlth. 474, 596 A.2d 269 (1991), appeal denied, 530 Pa. 667, 610 A.2d 46, and 531 Pa. 648, 612 A.2d 986 (1992); *Woodburn v. Consolidation Coal Co.,* 404 Pa.Super. 359, 590 A.2d 1273 (1991), appeal denied, 529 Pa. 633, 635, 600 A.2d 953, 954, and 529 Pa. 636, 600 A.2d 955 (1991); *Egan v. Atlantic Richfield Co.,* 389 Pa.Super. 290, 566 A.2d 1249 (1989), appeal denied, 525 Pa. 630, 634, 578 A.2d 925, 929 , and 525 Pa. 636, 578 A.2d 930 (1990). Some of these cases can be distinguished from the present one

■ Leonard next asserts that the contracts between Penn-DOT and Kiewit/Perini and, in turn, High Steel stated that work would be conducted in accordance with safety requirements, and that the contracts thereby created a duty towards him that provides a basis of liability. The contracts in question, as is usual with contracts for federally funded construction projects, included language mandated by the United States Department of Transportation Federal Highway Administration. That language incorporated specifications that there would be compliance with OSHA requirements and that the contractor would at all times "[k]eep direct control of the contract and see that the work is properly supervised...." The subcontract between High Steel and Cornell, in turn, provided:

> [Cornell] agrees to conduct and carry on its work in such manner as to avoid injury or damage to persons or property including its own work and be strictly responsible for damage to persons or property by failure so to do or by [Cornell's] negligence, and shall assume as to its work hereunder all obligations imposed on [High Steel] under the provisions of the General Contract and shall indemnify and hold harmless [High Steel] against such obligations in the same manner that [High Steel] is obligated to indemnify [Kiewit/Perini] and [PennDOT].

■ Thus, Cornell, under its subcontract for erection of steel, assumed all of the contractors' responsibilities for safety compliance with respect to its portion of the work. Having fully delegated to Cornell the task of erecting steel, the contractors higher in tier no longer had control over the manner in which that work was done. The contract with Cornell provides no basis to conclude that control over Cornell's work methods was being retained. The mere fact that

based on the presence or control of the contractor relative to the work site. For example, in *Donaldson* the contractor supplied defective scaffolding materials to the work site and these caused injuries to a subcontractor's employee. In *Woodburn* and *Egan*, however, the extent of the contractor's presence or control at the work site is not clear. To the extent, however, that the decisions may be interpreted as recognizing liability without there being any presence or control by the contractor, such decisions are in error.

contracts initially placed responsibility on Kiewit/Perini and High Steel does not make that responsibility nondelegable; nor does it give them a presumed presence at the site or control over the manner in which the subcontractor performed its work. To hold otherwise would mean that one could subcontract for the performance of work but not successfully delegate the safety responsibility that normally accompanies that work. Logically, safety responsibility best rests on the subcontractor doing the work, for that party is most familiar with the work and its particular hazards. As we stated in *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. at 151, 189 A.2d at 277 (quoting *Silveus v. Grossman*, 307 Pa. 272, 278, 161 A. 362, 364 (1932)), " 'How can the other party control the contractor who is engaged to do the work and who presumably knows more about doing it than the man who by contract authorized him to do it? Responsibility goes with authority.' " Thus, a subcontractor who undertakes a task is in the best position to provide for the safe accomplishment thereof, and delegation of safety responsibility to that subcontractor does not deviate from the contractor's duty.

Kiewit/Perini and High Steel are not, therefore, liable to Leonard with respect to the safety of work performed by Cornell. Accordingly, Commonwealth Court properly affirmed the judgments entered below.

Order affirmed.

Justice NIGRO files a dissenting opinion in which Mr. Justice SAYLOR joins.

NIGRO, Justice, Dissenting.

Unlike the majority, I believe that the Commonwealth Court erred when it determined that Kiewit/Perini and High Steel were not liable for Harold Leonard's injuries because they delegated their safety responsibilities and control of the work site to Cornell. In their respective contracts, Kiewit/Perini and High Steel voluntarily agreed to abide by all applicable federal, state, and local safety regulations in order to assure the safety of the employees involved in the construc-

tion of Interstate 476. Thus, in my view, both Kiewit/Perini and High Steel assumed a nondelegable duty to maintain a safe work site for the employees working on the site, including Mr. Leonard. Accordingly, I must respectfully dissent from the majority.

Nondelegable duties often arise where an employer has certain duties that are considered so important to the community that the employer cannot discharge these duties by simply delegating performance to another. *See* Restatement (Second) of Torts §§ 411–39 (1965); W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 78, at 511–12 (5th ed.1984).[1] These duties may also be created when a statute or administrative regulation imposes a duty upon an employer to provide specific safeguards for the safety of others. *See* Restatement (Second) of Torts § 411 (1965). Maintaining employee safety at the workplace is a strong public policy at both the state and federal level. *See* 29 U.S.C. § 651(b) (Congress' declaration that the purpose of OSHA is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions"); 43 P.S. § 25–

---

1. The term "nondelegable duty" is somewhat of a misnomer because an employer may properly delegate "nondelegable duties" to another, but the employer remains liable if the person to whom the performance is delegated acts negligently. Restatement (Second) of Agency §§ 214, 492–520 (1958); *General Building Contractors Assoc., Inc. v. Pennsylvania*, 458 U.S. 375, 395–96, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). Traditionally, employers of independent contractors have been immune from liability for the negligence of a contractor or the contractor's employees because of the employer's lack of control over the contractor's work. However, in recent years, courts have abandoned this independent contractor rule and found that in certain situations the employer of an independent contractor should be liable for the negligence of the independent contractor. As noted by one commentator:

    The departure from the rule is based in large part on the considerations that the employer is the one who primarily benefits from the work done by the contractor; the employer selects the contractor and is in a position to select a competent and financially responsible contractor; the employer is in a position to demand indemnity from the contractor; and the insurance necessary to distribute the loss is a proper cost of the employer's business.

    John D. Schminky, *The Liability of the Government Under the Federal Tort Claims Act for the Breach of a Nondelegable Duty Arising from the Performance of a Government Procurement Contract*, 36 A.F. L.Rev. 1, 3–4 (1992).

2(a) (pursuant to Pennsylvania law, "[a]ll establishments shall be so constructed, equipped, arranged, operated, and conducted as to provide reasonable and adequate protection for the life, limb, health, safety, and morals of all persons employed therein"); *Commonwealth v. Butler County Mushroom Farm*, 499 Pa. 509, 514, 454 A.2d 1, 5 (1982) (the enactment of the Pennsylvania Health and Safety Act "unequivocally demonstrates a legislative concern for the safety of employees in their employment environment").

In the Prime Contract entered into between PennDOT and Kiewit/Perini on June 14, 1988, Kiewit/Perini agreed to abide by PennDOT's 408 Specifications, as publicized in 1987. N.T., 10/17/95, Exhibit P 1 at R. 878a. The Specifications included the following duties:

### 105.5 RESPONSIBILITY OF CONTRACTOR

(a) **General.** *Keep direct control of the contract* and see that the work is properly supervised and is performed satisfactorily and efficiently. Supervise the work personally or appoint a competent superintendent or representative to be on the project at all times.

. . . .

(b) **Work by Others.** *For work to be done without the supervision of the Department, investigate the work and anticipate its execution and completion.*

. . . .

### 107.08 OCCUPATIONAL SAFETY AND HEALTH—

*Comply at all times* with applicable Federal, State, and local laws, provisions, and policies governing safety and health, including the Federal Construction Safety Act (Public Law 91–54), Federal Register, Chapter XVII, Part 1926 of Title 29 Code of Federal Regulations, Occupational Safety and Health Regulations ... *Take any other needed action or proceed as directed, to protect the life, health, and general occupational welfare of personnel employed on the project.*

When, in the Engineer's opinion, employees are exposed to extraordinary conditions which could or do constitute a

hazard, modify such equipment, devices, and job procedures to insure protection against the hazard or to reduce the risk to the employees engaged in the project work.

PennDOT 1987 Specifications (emphasis added), N.T., 10/17/95, Exhibit P 2, at R. 879–82a. These provisions from the Prime Contract were also incorporated into the Subcontract between Kiewit/Perini and High Steel, and High Steel agreed to uphold the provisions in its performance of the Subcontract. N.T., 10/17/95, Exhibit P 4, at R. 883–90a. Accordingly, both Kiewit/Perini and High Steel contracted to comply with OSHA regulations, including Sections 1926.104 and 1926.105 of OSHA, which mandate that an employer provide fall protection for employees working above the ground by installing either a static safety line or a safety net. See 29 C.F.R. §§ 1926.104, 1926.105.

Based on both the clear and unambiguous terms of the Prime Contract and Subcontract as well as the important federal and state interests of maintaining employee safety, I would find that Kiewit/Perini and High Steel each had a nondelegable duty to ensure a safe work site for all of the employees on the work site. See Steuart v. McChesney, 498 Pa. 45, 49, 444 A.2d 659, 661 (1982) (if a written contract is clear and unequivocal, it should be enforced according to the plain meaning of its words); Restatement (Second) of Torts §§ 411–39 (1965).[2] I simply cannot agree with the majority

2. Federal and state jurisdictions throughout the country have split on whether a contractor's agreement to uphold OSHA regulations should be considered in determining the contractor's duty of care. I agree with the reasoning of those jurisdictions that have found that while OSHA regulations do not create an independent basis for liability, the regulations may be considered in determining a contractor's duty to a subcontractor's employee when a contractor has voluntarily contracted to uphold OSHA regulations. See e.g., Teal v. E.I. DuPont de Nemours and Co., 728 F.2d 799, 803–04 (6th Cir.1984); Alloway v. Bradlees, Inc., 157 N.J. 221, 240, 723 A.2d 960, 969 (1999); Arrington v. Arrington Brothers Construction, 116 Idaho 887, 891, 781 P.2d 224, 228 (1989); Kelley v. Howard S. Wright Construction Co., 90 Wash.2d 323, 331–32, 582 P.2d 500, 505–06 (1978). Thus, as Kiewit/Perini and High Steel contracted to comply with OSHA regulations, I believe that Appellants should be entitled to introduce those regulations as evidence of Kiewit/Perini's and High Steel's duty of care and whether or not they breached that duty.

that Kiewit/Perini and High Steel should be permitted to evade liability for Appellants' injuries because they also required Cornell to uphold safety regulations while working at the site.[3] Holding both Kiewit/Perini and High Steel liable based on their independent duties to abide by applicable federal and state safety regulations would maximize employee safety, and thereby, advance the vital policies underlying those regulations.[4]

I also disagree with the majority that Kiewit/Perini and High Steel were immune from liability to Appellants because they did not control Cornell's work and were not physically present on the work site at the time Mr. Leonard was injured. In my view, Kiewit/Perini and High Steel clearly had control over Cornell's work as a result of their respective contracts, in which they both undertook the obligation to "[k]eep direct control of the contract and see that the work is properly supervised and is performed satisfactorily and efficiently;" and

3. The Commonwealth Court reached a similar conclusion in *Donaldson v. Dep't of Transp.*, 141 Pa. Commw. 474, 596 A.2d 269 (1991), a case in which the facts were comparable to the instant case. In *Donaldson,* the general contractor claimed that it was not liable to a subcontractor's employees because the subcontractor had agreed in its subcontract to comply with OSHA regulations and provide a safe work site. The Commonwealth Court rejected this argument, declaring that a subcontractor's duty "is not a substitute for the duty of the general contractor. Rather, the subcontractor's duty along with the duty of the general contractor is applicable to all work performed under the contract." *Id.* at 484, 596 A.2d 269 A.3d at 274. Although the majority in the instant case finds otherwise, the Commonwealth Court in *Donaldson* did not limit its finding that the general contractor was liable to the subcontractor's employee based on the fact that the general contractor also exerted some control over the site by providing the defective part which caused the employee's injury. Instead, the court determined that the general contractor could be liable to the subcontractor's employee on two independent bases of liability: first, its own contractual duty to provide a safe work site; and secondly, the fact that it furnished the defective part. *Id.* at 493, 596 A.2d at 278-79.

4. Although I do not believe that contractors should be able to avoid liability for injuries to a subcontractor's employees, I would note that contractors may always protect themselves by purchasing insurance or including indemnification clauses in their contracts, thereby making another party financially responsible. *See e.g., Woodburn v. Consolidated Coal Co.,* 404 Pa.Super. 359, 367, 590 A.2d 1273, 1277 (1991); *Egan v. Atlantic Richfield Co.,* 389 Pa.Super. 290, 295–97, 566 A.2d 1249, 1252–53 (1989).

to "comply at all times" with applicable safety regulations. Additionally, I do not believe that contractors, such as Kiewit/Perini and High Steel, should be excused from their obligation to ensure that a work site is safe simply because they choose to remain physically absent from the work site.[5]

Therefore, as I believe that both Kiewit/Perini and High Steel owed a nondelegable duty to provide a safe work site for Mr. Leonard, I would reverse the order of the Commonwealth Court and remand this case to the trial court for a jury to decide whether Kiewit/Perini and High Steel negligently performed that duty.

Justice SAYLOR joins the dissenting opinion.

---

5. The control test used by the majority essentially encourages contractors to shrug off their safety responsibilities by abdicating their control to another and staying absent from the worksite. In my view, contractors should be encouraged to become more, not less, involved in the well-being of the employees laboring on the site from which they hope to profit. Moreover, I believe it is inequitable to allow contractors to reap the benefits of federal contracts, in which they have specifically agreed to undertake these safety responsibilities, without having any accountability whatsoever when the safety responsibilities are not fulfilled. See John L. Messina, Jr., *Washington's Industrial Safety Regulations: The Trend Towards Greater Protection for Workers*, 17 U. Puget Sound L.Rev. 315, 341–42 (1994).