596 A.2d 269

Samuel E. DONALDSON and Dorothy Donaldson, his wife

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT
of TRANSPORTATION, and Dick Corporation
and Joseph B. Fay Company.

Appeal of COMMONWEALTH of Pennsylvania,
DEPARTMENT of TRANSPORTATION,
Appellant.

Samuel E. DONALDSON and Dorothy
Donaldson, his wife, Appellants,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT
of TRANSPORTATION, and Dick Corporation and
Joseph B. Fay Company, Appellees. (Two Cases)

JOSEPH B. FAY COMPANY, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT of
TRANSPORTATION, Dick Corporation and Samuel E. Don-
aldson and Dorothy Donaldson, his wife, Appellees.

Commonwealth Court of Pennsylvania.

Argued April 30, 1991.

Decided July 29, 1991.

Reargument Denied Sept. 16, 1991.

476

478

David G. Klaber, for appellants/appellees, Samuel and Dorothy Donaldson.

Lori D. Mendicino, for appellant/appellee, Joseph B. Fay Company.

Mark J. Gesk, for appellant/appellee, Dept. of Transp.

John Edward Wall, for appellee, Dick Corp.

Before DOYLE and SMITH, JJ., and BARRY, Senior Judge.

## OPINION

BARRY, Senior Judge.

Samuel Donaldson and Dorothy Donaldson, husband and wife, filed notices of appeal from orders of the Court of Common Pleas of Allegheny County in the Superior Court of Pennsylvania. Thereafter, the Department of Transportation (DOT) and Joseph B. Fay Co. (Fay) filed timely cross-appeals. The Superior Court then transferred the appeals to this Court.

In the mid–1980s, DOT awarded a contract to Dick Corporation (Dick) as general contractor for the repair and renovation of the Parkway Central in the City of Pittsburgh. Included in the contract were fourteen bridges. Dick subcontracted a portion of the demolition work and removal of the superstructure of certain bridges to Fay. Mr. Donaldson (hereinafter sometimes referred to as the plaintiff), a laborer in the employ of Fay, was assigned to work on the project.

The bridge to which the plaintiff was assigned ran over a public thoroughfare and to protect the traveling public from falling debris, planks of lumber were placed on the supporting I-beams underneath the road deck. A part of the plaintiff's job was to remove the debris which had fallen onto the planking shield. To accomplish this task, he had to walk on the planking and shovel away the debris. While walking on the planking, a board broke and the plaintiff fell some sixty-five feet to an embankment below. The plaintiff suffered serious and permanent injuries to various parts of his body. He had not worked from the time of the accident to the time of trial.

Mr. and Mrs. Donaldson filed a complaint, alleging that their injuries were the result of negligence on the part of

Dick and DOT. Dick eventually joined Fay as an additional defendant, alleging that the subcontract between Dick and Fay contained a provision whereby Fay had agreed to indemnify Dick for Dick's negligence. DOT also asserted a similar indemnification claim against Dick.

Prior to trial, Fay moved to sever and/or bifurcate the contractual indemnity question. Despite clear precedent of the Superior Court supporting Fay's request, *Fulmer v. Duquesne Light Co.*, 374 Pa.Superior Ct. 537, 543 A.2d 1100 (1988), the calender control judge denied the request. Immediately before trial Fay asked the trial court to reconsider the question but he refused to overrule the calendar control judge's order. As a result, Fay remained in the trial as a defendant. The trial court then reserved ruling on the indemnification issues until after the jury had returned its verdict.

Following the presentation of all of the evidence, the trial court submitted interrogatories to the jury, which requested them to apportion the causal negligence between the plaintiff, Dick and DOT.[1] The jury found that Dick was 53% negligent, DOT was 36% negligent and the plaintiff was 11% negligent. The jury found that Mr. Donaldson had sustained damages of $1,275,000 while Mrs. Donaldson had sustained damages of $50,000. DOT and Dick filed post-verdict motions.

In March of 1990, the trial court filed an opinion on the indemnification questions. He concluded that Dick was not required to indemnify DOT because, in his view, Dick had done nothing to contribute to the plaintiff's injuries. He also concluded that Fay was required to indemnify Dick. Finally, while DOT was not seeking indemnification from Fay, he stated that since Dick was not required to indemnify DOT, Fay could not be responsible to DOT.

1. Fay was allowed to present closing arguments to the jury whereby it informed the jury that there were reasons that its negligence could not be considered by the jury. In his charge, the trial court also gave similar instructions. As none of the parties have objected to these incidents, we need not discuss them any further.

On August 1, 1990, the trial court granted judgments n.o.v. in favor of Dick and DOT. The Donaldsons appealed each of the orders to the Superior Court. Both DOT and Fay then filed "cross-appeals" on the question of indemnification. The Superior Court then transferred all of the appeals to this Court.

We will first deal with the appeals of the Donaldsons in which they allege that the trial court erred in granting judgments n.o.v. in favor of both Dick and DOT. We have recently stated:

> Judgment n.o.v. is an extreme remedy properly entered by the trial court only in a clear case where, after viewing the evidence in the light most favorable to the verdict winner, no two reasonable minds could fail to agree that the verdict was improper. *Robertson v. Atlantic Richfield Petroleum Products Co.*, 371 Pa.Superior Ct. 49, 537 A.2d 814 (1987). The court must consider only the evidence which supports the verdict and afford the non-moving party the benefit of every fact and inference deducible therefrom. *Solomon v. Baum*, 126 Pa.Commonwealth Ct. 646, 560 A.2d 878 (1989).

*Pallante v. City of Philadelphia*, 133 Pa.Commonwealth Ct. 441, 443–44, 575 A.2d 980, 981 (1990). The trial court granted the judgments n.o.v. because of the rule set forth in *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 189 A.2d 271 (1963), that one hiring an independent contractor cannot be vicariously liable for the negligence of that independent contractor. According to the trial court, Fay was the party that was responsible for this accident. The court also stated that the plaintiff failed to prove the independent negligence of either DOT or Dick. We believe the trial court erred in granting judgment n.o.v. in favor of Dick. With regard to DOT, we believe that the judgment n.o.v. should have been granted but for a different reason than that relied upon by the trial court.

The plaintiffs' primary argument concerning the liability of Dick is that it had a contractual duty to make certain that the workplace was safe and in compliance with all

regulations of the federal governments' Occupational Safety and Health Administration (OSHA). The plaintiffs also argue that Dick supplied the board which broke and allowed Mr. Donaldson to fall; according to this argument, Dick is liable under Section 392 of the Restatement (Second) of Torts (hereinafter referred to as the Restatement). Finally, the plaintiffs assert that Dick is liable under Sections 416 and 427 of the Restatement.

The United States Department of Transportation Federal Highway Administration has mandated that all federal aid construction contracts contain the following relevant provisions. Section 1 of Part I, titled "Application", provides, "These contract provisions shall apply to all work performed on the contract by a contractor with his own organization and with the assistance of workmen under his immediate superintendence and to all work performed on the contract by piecework, station work or by subcontract." Part VIII, titled "Safety; Accident Prevention", provides:

In the performance of this contract, the contractor shall comply with all applicable Federal, State and local laws governing safety, health and sanitation. The contractor shall provide all safeguards, safety devices and protective equipment and take any other needed actions, on his own responsibility, or as the State highway department contracting officer may determine, reasonably necessary to protect the life and health of employees on the job and the safety of the public and to protect property in connection with the performance of the work covered by the contract.

It is a condition of this contract, and shall be made a condition of each subcontract entered into pursuant to this contract, that the contractor and any subcontractor shall not require any laborer or mechanic employed in performance of the contract to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his health or safety, as determined under construction safety and health standards (Title 29, Code of Federal Regulations, Part 1926, formerly Part

1518, as revised from time to time), promulgated by the United States Secretary of Labor, in accordance with Section 107 of the Contract Work Hours and Safety Standards Act (83 Stat. 96).

Plaintiffs argue that these provisions created a duty on Dick to make certain that the work area was safe and in compliance with OSHA regulations.

It is undisputed that the scaffolding, built with construction-grade planking rather than the stronger scaffold-grade planking, did not comply with OSHA regulations concerning scaffolding.[2] Furthermore, the Donaldsons presented the testimony of two experts each of whom testified that scaffold-grade planking is substantially stronger and capable of bearing a much greater weight than construction-grade planking. Furthermore, one of the experts testified that the broken plank, as described by a witness who saw it immediately after the accident,[3] was a "brash" (or sudden) failure of wood associated with wood of a lower density than scaffold-grade planking. The jury's verdict in favor of the Donaldsons shows that they believed the inferior wood used in the scaffolding was the proximate cause of the accident and such a finding is supported by the evidence presented. Thus, if Dick owed a duty to Mr. Donaldson to ascertain that the proper type of wood was used in the construction of the scaffolding, Dick was liable to the Donaldsons and the trial court's grant of a judgment n.o.v. in favor of Dick was erroneous because the breach of that duty along with the jury's determination of causation indicated *independent negligence* of Dick.

2. Dick and DOT both argue that the primary purpose of the "shield" as they chose to characterize the planking was to protect the travelling public underneath the work area from falling debris. No one seriously contends, however, that the parties were unaware of the fact that workmen walked on the planking, thereby making it "scaffolding" according to OSHA regulations.

3. The broken plank was not produced at trial. It was last seen in the truck of a foreman for Fay who did not know with certainty what had happened to the plank.

■ Dick advances a myriad of reasons that it had no such duty. It first argues that Fay signed a subcontract with Dick containing the same provisions, the effect of which was to relieve Dick of its responsibility to provide a safe workplace for the employees of Fay. Under the subcontract between Fay and Dick, Fay was, it is argued, responsible for providing all materials used in the scaffolding and was also responsible for erecting it. According to Dick's interpretation of the above-cited provisions, the general contractor is responsible for the safety of only its own employees and any subcontractor takes sole responsibility for the safety of its employees. We refuse to interpret the clear language in such a fashion. It is true that a subcontractor who signs a contract containing these provisions is responsible for the safety of its work area. That duty, however, is not a substitute for the duty of the general contractor. Rather, the subcontractor's duty along with the duty of the general contractor is applicable to all work performed under the contract.

■ Dick next argues that it is absolved from any liability to Mr. Donaldson under the holdings of *Hader* and *Brletich v. United States Steel Corp.*, 445 Pa. 525, 285 A.2d 133 (1971). In the former, the owner of the property, Coplay Cement, purchased a stone crusher from Kennedy, the manufacturer. Coplay also signed a contract with Keifriter for the erections and installation of the crusher. The plaintiff, an employee of Keifriter, was injured while installing the crusher. The plaintiff sued both Coplay and Kennedy. For our present purposes, only the court's discussion pertaining to Coplay is relevant.[4] The Court pointed out that Keifriter was truly an independent contractor because Coplay had no control over the work done by Keifriter installing the crusher. The general rule in this Commonwealth is that one who employs an independent contractor is not responsible for the negligence of that

---

4. The contract between Coplay and Kennedy required the latter to manufacture and deliver the crusher to Coplay's business premises. Once the item had been delivered, Kennedy simply had no responsibilities with regard to installing the crusher.

independent contractor. Concluding that Coplay exercised no control over the installation project, the court affirmed the trial court's order granting a compulsory nonsuit.

In *Brletich,* the plaintiff was an employee of Luria Brothers which had signed a contract with U.S. Steel to demolish a trestle owned by U.S. Steel. The plaintiff was injured while performing work under the contract. He sued U.S. Steel and the company which had provided and operated the crane in demolishing the trestle. Prior to trial, the plaintiff settled with the crane operator. As in *Hader* the trial court granted a compulsory nonsuit in favor of U.S. Steel. In an effort to circumvent the general rule of *Hader,* the plaintiff argued that U.S. Steel had the necessary level of control because of a contractual provision giving U.S. Steel the right to inspect and approve the work done by the plaintiff's employer. The court pointed out that such inspection and approval was to insure the owner was obtaining the benefit for which it had contracted and was not subjecting the independent contractor to the owner's control.

We believe both of these cases are distinguishable from the present case. In the present case, Dick was required by its contract with DOT to make certain that the workplace was safe. In other words, Dick, by signing the contract, took on a *duty* which gave it the necessary control. This duty is obviously different from the *right* of inspection in *Brletich.* For these reasons, Dick's argument that it cannot be liable under the holdings of *Hader* and *Brletich* must be rejected.

Dick next argues that this case is controlled by *Ortiz v. Ra–El Development Corp.,* 365 Pa.Superior Ct. 48, 528 A.2d 1355 (1987). In that case, the plaintiff was injured when he fell from a fourteen foot scaffold which had been erected by his employer, a contractor who had been hired by the owner. The injured employee sued the owner of the property. In an attempt to circumvent the general rule of *Hader,* the plaintiff relied upon Sections 416 and 427 of the Restatement. In determining that those sections did not apply, the court held that working on scaffolding fourteen

feet off the ground was not "specially dangerous". We do not believe *Ortiz* has any relevance to the present case because it involves exceptions to the general rule set forth in *Hader* and *Brletich*. We have already determined that those cases do not apply because Dick had assumed a duty involved in its contract with DOT. We also note that there is a substantial difference in working on scaffolding that is sixty-five feet, as opposed to fourteen feet, from the ground.

 Dick next argues that since the case was tried solely on the basis of negligence, Mr. Donaldson may not recover as a third party beneficiary of the contract between Dick and DOT. This argument may be disposed of by a review of *Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A.2d 573 (1961). In that case Otis had signed a contract with the plaintiff's employer to provide maintenance on an elevator. When the plaintiff was injured while a passenger in the elevator, he sued Otis which argued that the plaintiff could not rely upon the contract between the employer and Otis. As the Supreme Court stated:

> Generally a party to a contract does not become liable for a breach thereof to one who is not a party thereto. However, a party to a contract by the very nature of his contractual undertaking will place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby.... It is not the contract per se which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract. If a person undertakes by contract to make periodic examinations and inspections of equipment, such as elevators, he should reasonably foresee that a normal and natural result of his failure to properly perform such undertaking might result in injury not only to the owner of the equipment but also third persons, including the owner's employees.... The orbit of Otis' duty to third persons is measured by the nature and scope of his contractual

undertaking with Sperling and, if, as presently appears, Otis undertook to inspect the elevator at regular intervals, and, if the elevator was in a defective or dangerous condition discoverable by reasonable inspection, Otis would be liable to third persons, regardless of any privity of contract, who might be injured by Otis' failure to properly perform its contractual undertaking of inspection. Such principle finds support in reason, justice and precedent. . . .

*Id.,* 403 Pa. at 18–19, 168 A.2d at 575–76. In the present case, Dick agreed in its contract with DOT to make certain that the workplace was safe and that no employee should be required to work in dangerous or hazardous conditions. As Mr. Donaldson is clearly within the scope of this undertaking, the *Evans* case shows that Dick's argument is meritless.

Dick also argues that it is immune from liability to the Donaldsons because it is a "statutory employer" under Sections 302(a) and 302(b) of the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 461 and § 462 (Supp.1990–91). Section 302(a) provides that a contractor may be liable under the act for injuries to employees of a subcontractor if the subcontractor has not secured the payment of workmen's compensation benefits. As the subcontractor here, Fay, has provided payment of those benefits, Section 302(a) does not support Dick's argument that it is a statutory employer. As we have stated:

Although the meaning of 'statutory employer' under Section 302(b) of the Act, 77 P.S. § 462, has not itself been interpreted, our Supreme Court has construed similar language in Section 203 of the Act, 77 P.S. § 52, and has required five elements be shown:

(1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A sub-contract made by such employer. (4) Part of the

employer's regular business intrusted to such subcontractor. (5) An employee of such subcontractor.

*McDonald v. Levinson Steel Co.*, 302 Pa. 287, 295, 153 A. 424, 426 (1930); *Nineteen North, Inc. v. Workmen's Compensation Appeal Board*, 48 Pa.Commonwealth Ct. 208, 409 A.2d 503 (1979). Furthermore, *actual* control must be demonstrated and a showing that there is simply a *right* to control is insufficient. *Perma–Lite of Pennsylvania v. Workmen's Compensation Appeal Board*, 38 Pa.Commonwealth Ct. 481, 393 A.2d 1082 (1978). We agree with the referee and the parties that these criteria are equally applicable under Section 302(b), 77 P.S. § 462. *Wright Demolition and Excavating Co. v. Workmen's Compensation Appeal Board (Manuel)*, 61 Pa.Commonwealth Ct. 479, 482–83, 434 A.2d 232, 234 (1981) (emphasis in original). Dick concedes that it did not have *actual* control but argues that its right (and as we have concluded its duty) to control is sufficient to make it a statutory employer and immune from liability to the Donaldsons. We cannot agree.

In support of its position that the mere *right* to control is enough to classify one as a statutory employer, Dick relies upon *Ace Tire Co. v. Workmen's Compensation Appeal Board (Hand)*, 101 Pa.Commonwealth Ct. 186, 515 A.2d 1020 (1986), and *Mitchell v. W.S. Cumby & Son, Inc.*, 704 F.Supp. 65 (E.D.Pa.1989). We believe the former case is distinguishable from the present one since it involved a question of insurance coverage. The latter does contain dicta which supports Dick's argument but we are not bound to follow that federal case, especially in light of its actual holding discussed below.

In *Ace Tire,* mentioned above, Platt, the general contractor, was hired to construct a building. Shelton submitted a bid to do excavation work. When Platt and Shelton had difficulties in obtaining the necessary performance bonds, Platt contacted Ace Tire which was able to get the necessary bonds. Platt then hired Ace Tire as a subcontractor and Ace Tire subcontracted out the excavation work to

Shelton. As part of the agreement between Platt and Ace Tire, the latter was required to carry workmen's compensation insurance; Platt paid the premiums for both the insurance and the bonds. Shelton was uninsured. One of its employees, Hand, was injured while working on the job. Hand filed a claim petition, naming both Ace Tire and Platt as his statutory employers. The referee and the board concluded that only Ace Tire was the statutory employer as Platt had relieved itself of responsibility under Section 302(a) when it required Ace Tire to provide the workmen's compensation insurance. Ace Tire argues that it did not exercise actual control. In rejecting this argument, we stated:

> Ace is clearly an essential partner in this transaction because without Ace's active cooperation, the project would have never commenced. It was Ace who obtained the necessary performance bond and specifically procured workmen's compensation insurance to cover its liability as required by Platt, the general contractor. *While Ace may not have exercised any actual control over the construction site, it certainly had the potential, as the first contractor, to do so....* The Board committed no error when it found Ace to be a statutory employer under the Act.

*Ace Tire*, 101 Pa.Commonwealth at 189, 515 A.2d at 1022 (emphasis added). Dick, of course, relies upon the emphasized portion of the quote to support its argument. We believe, however, that *Ace Tire* presents a scenario which is *sui generis*. It is not the right to control that was the governing factor in that case but rather the fact that Ace Tire had purchased the necessary insurance coverage. That case does not convince us that this Court should overrule the consistent precedent that actual control is normally necessary.

In *Mitchell*, the owner hired Cumby for the reconstruction of a building. Cumby subcontracted a portion of the demolition and rehabilitation work to RVS. Mitchell, an employee of RVS was injured while on the job and sued

Cumby, the general contractor. In granting Cumby's motion for summary judgment, the district court held that the undisputed facts showed that Cumby exercised *actual control* over the job and was thus a statutory employer. By way of dicta, the court stated that the right to control was sufficient. The court recognized that there was no decision of the Pennsylvania Supreme Court which decided this question of substantive state law but "predicted" that when presented with the question, the Supreme Court would so rule. With all due deference to our federal colleague, such a prediction in dicta cannot overcome the well established rule in Pennsylvania that actual control is necessary.

For all of the above reasons, we cannot accept Dick's arguments that it owed no duty to Mr. Donaldson. It owed him a duty and breached that duty when it did not require the use of scaffold-grade planking on the project. As the jury found that the breach of the duty was the proximate or legal cause of the accident, we believe the trial court erred in granting judgment n.o.v. in favor of Dick.

The Donaldsons advance another reason that the trial court erred in granting judgment n.o.v. in favor of Dick. The Restatement provides in Section 392:

> One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied
>
> (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
>
> (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

The Donaldsons argue that Dick was the supplier of the defective piece of lumber which broke and led to Mr. Donaldson's serious injuries. In support of this theory of

Dick's liability, the plaintiffs presented the following evidence. Donald Stape had been hired by DOT as an inspector for the project. He arrived at the accident scene shortly after the plaintiff fell and found broken pieces of the scaffolding on the ground. The broken planking was a piece of 2' by 10' lumber. The plaintiffs also presented the invoices for all of the lumber used on the project. Fay had purchased only 2' by 12' pieces of lumber while Dick had purchased both 2' by 12' and 2' by 10' pieces of lumber. Finally, Robert Janzef, a carpenter for Fay in charge of erecting the scaffolding, testified for the Donaldsons. He stated that a number of pieces of 2' by 12' lumber had been purchased by Fay and stored in the Dick lumber yard. When this lumber was used up, Mr. Janzef and his workers used lumber in the yard to complete the job; according to his testimony, an employee of Dick, whose name he thought was Hank Kendall, pointed out piles of lumber which could be used to complete the scaffolding. Mr. Janzef also testified that he had used the pieces of Dick's lumber in the area of the accident.

 Dick makes two arguments with regard to this theory. It first argues that the evidence was insufficient to prove that Dick supplied the defective piece of planking. In support of this position, it points to cross-examination of both Mr. Stape and Mr. Janzef. Mr. Stape admitted on cross-examination that the piece of lumber could have been 2' by 12'. Mr. Janzef engaged in the following exchange with Dick's counsel:

Q: Okay. Now, you mentioned Hank Kendall, and you said that he took you to the yard where everything was stored?

A: That's right, yeah.

Q: Okay. Now, I'm not asking for what your impression was, but I'd just like to know, you're not saying that Mr. Kendall said go ahead and use any wood you want?

A: Okay, I couldn't remember what anybody said to tell you the truth, you know.

(Videotape deposition of Robert Janzef, 11/22/89, p. 36.) Dick argues that these responses on cross-examination rendered the Donaldsons' proof insufficient as a matter of law. We do not agree.

In *Commonwealth v. Morin*, 237 Pa.Superior Ct. 533, 539–40, 352 A.2d 189, 192 (1975), *reversed on other grounds*, 477 Pa. 80, 383 A.2d 832 (1978), the court stated, "The fact that a witness makes inconsistent or even contradictory statements does not make her an incompetent witness, but may affect her credibility." We believe this statement is especially apt in the present situation. Mr. Stape had previously testified without equivocation on direct examination that the board was 2' by 10'. A statement on cross-examination that it could have been 2' by 12' does not render his testimony on direct incompetent. Further, a review of the entire testimony of Mr. Janzef shows that he had trouble remembering *exact details* of everything that occurred over four years prior to the taking of his deposition. The testimony on cross relied upon by Dick is such testimony. Again, as with Mr. Stape, the direct examination testimony of Mr. Janzef was sufficient to allow the Donaldsons to meet their burden of proof on this question. While the credibility of the witnesses was at issue because of their answers on cross-examination, that question was for the jury, and not this Court.

Dick also argues that even if the Donaldsons met their burden of proof by showing that Dick supplied the lumber, Section 392 of the Restatement is not applicable. Dick argues that if it supplied the lumber it did so as a mere gratuity and, therefore, does not fall within the ambit of Section 392. If Dick's act were a gratuity, there would be merit to this argument. *See* Section 392 of the Restatement, Comment (e). In *Lambert v. Pittsburgh Bridge & Iron Works*, 227 Pa.Superior Ct. 50, 323 A.2d 107 (1974), *aff'd* 463 Pa. 237, 344 A.2d 810 (1975), the court stated that Section 392 was applicable where the supplier obtained a direct or indirect pecuniary benefit. In this case, Henry Kendall, Dick's superintendent of this project, testified that

the planking was left in place after Fay had finished its demolition work while Dick completed the reconstruction of the bridge. Under these circumstances, Dick received a direct benefit from supplying the lumber.

Accordingly, the Donaldsons proved another theory of liability on which the jury could have, in its role as fact finder, found liability against Dick. For this additional reason, the trial court's grant of judgment n.o.v. in favor of Dick was error.

■ The trial court also granted judgment n.o.v. to DOT on the same basis as Dick, i.e., all of the negligence involved was the result of Fay's actions. The Donaldsons argue that DOT also had duties imposed upon it to insure that the workplace was safe. We need not discuss this question because we believe that DOT is immune from liability under 42 Pa.C.S. § 8522(b). As it is well settled that we may affirm even where the reasoning of the trial court is erroneous if the correct reason is apparent from the face of the record, *Police Pension Fund Association Board v. Hess*, 127 Pa.Commonwealth Ct. 498, 562 A.2d 391 (1989), we will affirm the court's order granting judgment n.o.v. in favor of DOT.

42 Pa.C.S. § 8522(b) provides:

The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised for damages caused by:

. . . . .

(3) **Care, custody or control of personal property.**—The care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency....

(4) **Commonwealth real estate, highways and side-walks.**—A dangerous condition of Commonwealth agency real estate and sidewalks ... and highways under the

jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

The Donaldsons argue that the present situation falls within one of the these waivers of immunity. We do not agree.

▆▆▆ With regard to the waiver of immunity contained in subsection (b)(4), we would have little difficulty holding that defective scaffolding was a "dangerous condition" as envisioned by the Legislature when it enacted this legislation. What we cannot hold here is that the scaffolding was a dangerous condition *of either real property or a highway.* This conclusion is compelled by caselaw of both this Court and the Supreme Court.

▆▆▆ We cannot disregard the Supreme Court's dictate that the exceptions to immunity are to be narrowly construed against the injured plaintiff in favor of the governing body. *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987). We have held on two occasions that scaffolding erected to perform construction on real property was not "real property" and thus within the waiver of 42 Pa.C.S. § 8542(b)(3). *Hawkins v. City of Harrisburg,* 120 Pa.Commonwealth Ct. 369, 548 A.2d 399 (1988); *Maloney v. City of Philadelphia,* 111 Pa.Commonwealth Ct. 634, 535 A.2d 209 (1987). These holdings were based upon the fact that, in both cases, the scaffolding was not sufficiently annexed to the real property and thus remained personal property.

▆▆▆ The Donaldsons argue that the distinction between realty and personalty is irrelevant in the present situation. They first point out that the scaffolding cases involve local governmental immunity as opposed to sovereign immunity. While those two sections are indeed somewhat different, this distinction has no real legal significance. In *Snyder v. Harmon,* 522 Pa. 424, 435 n. 7, 562 A.2d 307, 312 n. 7 (1989), the Supreme Court explicitly disavowed the distinction this Court made between the two set forth in *Gratkie v. Air Wisconsin, Inc.,* 107 Pa.Commonwealth Ct. 461, 528 A.2d 1032 (1987).

■ The Donaldsons also argue that the terms "highway" and "real estate" as used in 42 Pa.C.S. § 8522(b)(4) are legally insignificant, claiming that the scaffolding, while not real property, is a dangerous condition *of the highway.* The Supreme Court, in *Snyder,* indicated that this argument cannot prevail. In that case, the plaintiffs were injured when they fell into a strip mine adjacent to a state highway. The drop-off was outside the highway's right-of-way. The plaintiffs alleged that the failure to warn, either by lights or physical barriers, constituted a dangerous condition of the highway's right-of-way. We agreed with the plaintiff's contention. 102 Pa.Commonwealth Ct. 519, 519 A.2d 528 (1986). After granting DOT's petition for allowance of appeal, the Supreme Court reversed, stating that "a dangerous condition must derive, originate from or have as its source *the Commonwealth realty."* 522 Pa. at 433, 562 A.2d at 311 (emphasis added). We believe that the use of the terms "highways" and "sidewalks" in 42 Pa.C.S. § 8522(b)(4) does not indicate a legislative intention that those terms are something different from realty; rather, we believe those are specifically identified subclasses of real estate. We, therefore, must conclude that defective scaffolding is not within the limited waiver of immunity as contained in 42 Pa.C.S. § 8522(b)(4).

■ The Donaldsons next argue that if the classification of the scaffolding as personalty is relevant it is personal property within the waiver of immunity contained in 42 Pa.C.S. § 8522(b)(4). They claim that the scaffolding was under the "care, custody or control" of DOT by virtue of its setting of the specifications in the contract and its right to inspect the workplace. We must reject this argument.

In *Kline v. Pennsylvania Mines Corp.,* 120 Pa.Commonwealth Ct. 7, 547 A.2d 1276 (1988), plaintiffs instituted wrongful death actions and personal injury actions after a mine explosion. For our present purposes, the plaintiffs named the Department of Environmental Resources as a defendant because it allegedly had failed to perform its statutory duty to insure mine safety by inspecting and

taking necessary steps to make certain the mine was safe. When DER raised the defense of immunity, the plaintiffs argued that the case fell within either personal property or real property exceptions to immunity. After stating the obvious, that DER owned neither the mine itself or the jeep that allegedly caused the explosion of methane gas by throwing sparks, we held that regulatory and enforcement powers do not constitute "care, custody or control" of property as envisioned in 42 Pa.C.S. 8522(b). Because DOT, in the present case, does not own the scaffolding, we believe *Kline* is dispositive. Accordingly, DOT is immune from liability to the Donaldsons in all respects.

We now turn to the appeals of Fay and DOT concerning the trial court's determination of the questions of indemnity. As mentioned at the beginning of this opinion, the trial court, after the jury had returned its verdict but before the court granted judgments n.o.v., decided that Fay was required to indemnify Dick and that Dick was not required to indemnify DOT. Both DOT and Fay have filed appeals from that order.

We first believe that DOT's appeal must be quashed in light of our prior discussion concerning immunity which renders DOT's appeal moot. As DOT cannot be liable to the Donaldsons as a matter of law on this set of facts, there is no need to discuss the question of whether Dick agreed to indemnify DOT. Accordingly, DOT's appeal on the question of indemnification is dismissed as moot.

We have determined, on the other hand, that the trial court erred in granting judgment n.o.v. in favor of Dick against the Donaldsons. Since Dick is liable to the Donaldsons, the question of whether Fay had agreed to indemnify must be answered.

Section 303 of the Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 481(b) provides:

In the event injury or death to an employe is caused by a third party, then such employe, his legal representative,

husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request *shall not be liable to a third party for damages, contribution or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.* (Emphasis added.)

If Fay is to be liable for indemnification of Dick, such liability must be expressly provided for in the contract between Dick and Fay.

The parties point to two clauses in that contract which could be applicable. The ninth paragraph provides:

The Subcontractor shall protect, indemnify, and defend the Contractor against any loss or damage suffered by anyone *arising through the acts, failure to act, or negligence of the Subcontractor,* or those employed by him or his agent or servants, and whether or not said loss or damage is alleged to be caused in part by a party indemnified hereunder; he shall bear any expense which the Contractor may have by reason thereof, or on account of being charged with such loss or damage, and if there are any injuries to persons or property unsettled for when the work herein provided for is finished, final settlement between the Contractor and Subcontractor shall be deferred until claims therefore are adjusted or suitable special indemnity acceptable to the Contractor is provided by the Subcontractor. This paragraph shall apply particularly, but not exclusively, to the claims of this Subcontractor against any other Subcontractor and to the claims of any other Subcontractor against this Subcontractor, and this Subcontractor shall have no claim against the

Contractor for any acts, failure to act, or negligence of any other Subcontractor. (Emphasis added.)

The thirty-third paragraph of that same subcontract between Dick and Fay provides:

In the event that the Contractor *rents or loans equipment, machines, and/or tools to the Subcontractor,* and whether or not such rental or loan includes the providing of a Dick Corporation/Dick Enterprises, Inc., a Joint Venture operator, the Subcontractor hereby agrees to make no claim whatsoever against the Contractor for any personal injuries or property damages caused in the course of carrying out the Subcontractor's request for the rental or loaned equipment. The Subcontractor hereby agrees to defend, indemnify and hold harmless the Contractor against any and all claims, loss or damage, including attorney's fees, that may arise from the Contractor's complying with or attempt to comply with Subcontractor's request for rented or loaned equipment. This indemnification shall apply regardless of whether or not such personal injuries or property damages *may be the result of as the negligence, in whole or in part, of the Dick Corporation/Dick Enterprises, Inc., A Joint Venture or its employees or otherwise due to the fault of Dick Corporation/Dick Enterprises, Inc., A Joint Venture or its employees.* (Emphasis added.)

We have concluded that Dick was *independently negligent* to the plaintiffs. Accordingly, in its claim for indemnification, Dick is seeking to be indemnified by Fay for Dick's own negligence. A review of the above cited language of this subcontract, in light of established caselaw, will show that Fay is not liable for indemnification.

In *DiPietro v. City of Philadelphia,* 344 Pa.Superior Ct. 191, 196, 496 A.2d 407, 410 (1985), (citations omitted), the court stated:

While it is not contrary to public policy for a party to contract for indemnification against its own torts ... the language in the indemnity provision must be clear and unequivocal, and the burden of proof falls on the party

seeking such relief; the burden is even greater where such party drafted the agreement.

We have also stated that "[a] contract will not be construed to indemnify a party for its own negligence, unless such a provision is expressed in unequivocal terms." *Burgan v. City of Pittsburgh* 115 Pa.Commonwealth Ct. 566, 576–77, 542 A.2d 583, 588 (1988). We simply cannot hold that the ninth paragraph of the subcontract unequivocally provides that Fay shall indemnify Dick for Dick's own negligence. This conclusion is buttressed by looking to the language used in the thirty-third paragraph where it was clear that Fay had agreed to indemnify Dick for Dick's own negligence in the case of rented or loaned equipment, machines and/or tools. Dick did not argue below, nor does it argue here, that the scaffolding fell within the category of "equipment". Even if it had, such an argument would have been meritless.

The contract between Dick and Fay contains no language which would allow us to conclude that Fay had agreed to indemnify Dick for Dick's own negligence except for the limited instance where Dick loaned or rented Fay equipment, machines and/or tools. Dick's independent negligence towards the Donaldsons was based either upon its failure to make certain that the workplace was safe or upon its supplying a defective plank which was used as scaffolding. As neither of these instances of negligence falls within the category of renting or loaning equipment, machinery and/or tools, the trial court erred in concluding that Fay had agreed to indemnify Dick.

We enter appropriate orders.

## ORDER

NOW, July 29, 1991, the order of the Court of Common Pleas, dated August 1, 1990, at No. G.D. 87–01679, is reversed insofar as it granted judgment n.o.v. in favor of Dick Corporation against Samuel Donaldson and Dorothy Donaldson. Insofar as that order granted judgment n.o.v.

in favor of the Commonwealth of Pennsylvania, Department of Transportation, it is affirmed.

## ORDER

NOW, July 29, 1991, the appeal by the Commonwealth of Pennsylvania, Department of Transportation, in the above captioned matter, is dismissed as moot.