Mark **WEINERMAN** and
Randi **Weinerman**

v.

**CITY OF PHILADELPHIA, et al.**

Civ. A. No. 91–1617.

United States District Court,
E.D. Pennsylvania.

Feb. 21, 1992.

Memorandum on Denial of
Reconsideration March
16, 1992.

Frederic I. Weinberg, Pepper, Gordon & Breen, P.C., Philadelphia, Pa., for plaintiffs.

Joseph P. Connor, Connor & Weber, P.C., Philadelphia, Pa., for City of Philadelphia and Philadelphia Housing Development Corp.

Joseph F. Van Horn, Jr., Swartz, Campbell & Detweiler, Philadelphia, Pa., for A & J Gen. Carpentry Co., Inc.

Natale F. Carabello, Philadelphia, Pa., for Domenic Monte.

## MEMORANDUM

BARTLE, District Judge.

As a result of personal injuries suffered on April 4, 1989, plaintiff Mark Weinerman ("Weinerman") has brought this diversity action against the City of Philadelphia ("City"), A & J General Carpentry Company, Inc. ("A & J"), the Philadelphia Housing Development Corporation ("PHDC"), and Domenic Monte, individually and doing business as A & M Welding Services ("Monte"). Mark Weinerman's wife, Randi Weinerman, has sued these same entities claiming loss of consortium. Defendants A & J, the City and the PHDC have filed motions for summary judgment that are now before the Court.

Mr. Weinerman sustained injuries during the renovation of a house at 525 North Paxon Street, Philadelphia, Pennsylvania. This property was then either jointly owned by the City and the PHDC, or owned by the City and being renovated pursuant to a contract between the City and the PHDC. A & J was the general contractor for the renovations; Monte and Weinerman's company, Mark Weinerman Plumbing & Heating, Inc. ("Weinerman, Inc."), were subcontractors. Weinerman, Inc. was hired to perform all plumbing work on the site while Monte was hired to perform the wrought iron work.

It is undisputed that plaintiff Weinerman's injuries occurred when he was struck by a "lolly column" or pole extender which Monte was using together with a hydraulic jack to lift the porch roof of the property in order to replace the porch support columns. The steel lolly column, which was approximately fifteen (15) feet long, fit into the jack and was placed between the floor of the porch and the underside of the porch roof. While Monte was using this rig to raise the porch roof, the lolly column dislodged and fell, striking Weinerman in the head. When Weinerman was injured he was acting in the course and scope of his employment.

The applicable law to be applied in deciding motions for summary judgment is well settled. To obtain the relief sought, the moving party(ies) must establish that no genuine issues of material fact remain in dispute. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Further, the substantive law of the Commonwealth of Pennsylvania must be applied, *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and the evidence must be viewed in the light most favorable to the non-moving party. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir.1990). *See also* Fed.R.Civ.P. 56(a). Applying this settled law, and for the reasons set forth below, the motion of A & J will be denied and the joint motion of the City and the PHDC will be granted.

A & J claims that it is Weinerman's statutory employer within the meaning § 462 of the Pennsylvania Workmen's Compensation Act ("Compensation Act").[1] Accordingly, A & J argues, pursuant to § 481(a) of the Compensation Act, that it is immune from suit by Weinerman.

---

**1.** Contrary to plaintiffs' contention, A & J's motion was timely filed and therefore will be substantively considered. This Court's scheduling order required summary judgment motions to be filed on or before January 20, 1992. Insofar, however, as January 20, 1992 was a legal holiday, A & J's filing of its motion on January 21, 1992—the next following business day—was timely. *See* Fed.R.Civ.P. 6(a).

The Compensation Act, at 77 Pa.S. § 481(a), does provide that:

[t]he liability of an employer under this act *shall be exclusive* and *in place of* any and all other liability to such employes ...

(emphasis added).

While A & J was not Weinerman's employer as such, it contends that it is nonetheless immune from suit pursuant to § 481(a) because it was liable under the act for the injuries sustained by Weinerman and, therefore, an employer under the Compensation Act. A & J relies on 77 Pa.S. §§ 461 and 462 which provide, in pertinent part:

§ 461. **Coverage of employees of subcontractor; subcontractor defined; exception**

A contractor who subcontracts all or any part of a contract and his insurer shall be liable for the payment of compensation to the employes of the subcontractor *unless the subcontractor* primarily liable for the payment of such compensation *has secured its payment* as provided for in this act. ...

§ 462. **Coverage of laborer or assistant hired by employe or contractor; contractor defined**

Any employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of such employer's regular business entrusted to that employe or contractor, shall be liable for the payment of compensation to such laborer or assistant *unless such hiring employe or contractor,* if primarily liable for the payment of such compensation, *has secured the payment thereof* as provided for in this act.

·     ·     ·     ·     ·

(emphasis added). These statutory provisions establish worker's compensation liability, and thus immunity from a worker's personal injury suit, for the specified con-

tractors or employers *unless* the primarily liable subcontractor, or hiring employer or contractor respectively, has secured the payment of worker's compensation as provided for by the act.

■ Based on the plain language of § 461 the Pennsylvania courts have refused to afford contractors the benefits of the exclusive remedy provision of § 481(a) in circumstances where the subcontractor has provided payment of worker's compensation benefits.[2] No apparent basis would exist for reaching a contrary result when applying § 462 which pertains to employers. *See Donaldson v. Commonwealth, DOT,* 141 Pa.Cmwlth. 474, 596 A.2d 269, 276 (1991).[3] Thus, regardless of whether A & J is classified as a contractor or an employer for purposes of the statute, A & J's contention that it is entitled to the benefit of immunity from suit, under the exclusive remedy provision of § 481(a), would have merit only if the entity employing Weinerman had not secured the payment of worker's compensation as provided for in the act. *See Donaldson, supra,* 596 A.2d at 276; 77 Pa.S. §§ 461 and 462.

■ It is uncontradicted that Weinerman, Inc., the subcontractor, had secured worker's compensation benefits for Weinerman and that Hanover Insurance Company, Weinerman Inc.'s worker's compensation carrier, paid benefits to Weinerman. *See* Notice of Compensation Payable, attached as Exhibit G to "Plaintiffs' Response to Motion for Summary Judgment of Defendant, A & J General Carpentry Company, Inc." A & J's motion for summary judgment therefore will be denied.

In their joint motion for summary judgment the City and the PHDC claim immunity from suit based on the Pennsylvania Political Subdivision Tort Claims Act. That Act provides immunity from personal injury suits for the Commonwealth's political subdivisions except under limited circumstances. 42 Pa.Cons.Stat.Ann. § 8541 *et*

---

**2.** Section 3.1.1 of the contract clearly establishes that A & J was the contractor under the terms of the agreement which was in effect when Weinerman was injured.

**3.** In any event, A & J would not qualify as such a statutory employer under the applicable five part test. *See Donaldson, supra,* 596 A.2d at 276.

*seq.* The pertinent section of the Political Subdivision Tort Claims Act, § 8541, provides:

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

■ The initial question for decision, therefore, is whether the City and the PHDC are local agencies under the Political Subdivision Tort Claims Act. Settled Pennsylvania case law establishes that the City is such a local agency and plaintiffs concede this fact. *See Walsh v. City,* 526 Pa. 227, 585 A.2d 445, 450 (1991); ¶ 7 of plaintiffs' response to joint motion for summary judgment. The status of PHDC, however, is not so readily apparent.

■ Under the Political Subdivision Tort Claims Act, a "Local agency" is *"A government unit* other than the Commonwealth government. The term includes an intermediate unit." 42 Pa.Cons.Stat.Ann. § 8501 (emphasis added). "Government unit" is defined as "The General Assembly and its officers and agencies, *any government agency* or any court or other officer. or agency of the united judicial system." 42 Pa.Cons.Stat.Ann. § 102 (emphasis added). "Government agency" is defined as "Any Commonwealth agency or any political subdivision or *municipal or other local authority,* or any officer or agency of any such political subdivision or local authority." 42 Pa.Cons.Stat.Ann. § 102 (emphasis added). Thus, the PHDC is a local agency for purposes of the Political Subdivision Tort Claims Act if it is a municipal or local authority.

The uncontradicted evidence establishes that the PHDC is a non-profit corporation formed, pursuant to the Pennsylvania Non–Profit Corporation Act, to provide services and activities which would develop new housing employment opportunities, improve living conditions for the elderly, and improve housing and living facilities and home management skills in the City in general. Toward this end, PHDC is empowered by its charter to acquire and rehabili-

tate derelict properties so that they may be returned to the housing market for lower income residents. Its Board of Directors consists of ten (10) directors who hold their directorships because of their status as City officers and twenty-five (25) additional directors who are nominated by the Mayor. PHDC is required by the City's office of Management and Budget to comply with directives that must be adhered to only by local governments or quasi-governmental agencies. Moreover, PHDC is exempt from all real estate taxes and municipal liens and claims and has the power to eradicate taxes, claims and municipal liens on property which it acquires. Should PHDC ever be dissolved, its property rights would vest in the City. Finally, it contributes on behalf of its employees to a pension plan under § 414(h)(2) of the Internal Revenue Code. That provision applies only to plans established by a state government, its agencies, instrumentalities or political subdivisions thereof.

These facts establish that the PHDC is a local agency under the Political Subdivision Tort Claims Act. As was stated by the Commonwealth Court in *Rhoads v. Lancaster Parking Authority,* 103 Pa.Commw. 303, 520 A.2d 122 (1987), *allocatur denied,* in which the Lancaster Parking Authority was held to be a local authority under the act:

[m]unicipal authorities *are* independent corporate agents of the Commonwealth which exercise *governmental,* as well as private corporate power, in assisting the Commonwealth in meeting the needs of its citizens.... [S]uch authorities must be separate and distinct entities from the municipalities which form them for reasons of public policy and convenience.... [T]here would be no public policy reason, however, to exclude municipal authorities from the penumbra of immunity granted to local municipalities ...

(emphasis in original). The Court's decision here is also consistent with that of Judge VanArtsdalen in *ADW Inc. v. The Lutheran Social Mission Society, et al.,* Civil Action No. 86–5427 (E.D.Pa.,), 1988 WL 100311, 1988 U.S.Dist. LEXIS 10708, in

which he held, based on *Rhoads, supra,* that the PHDC is a local agency for purposes of the Political Subdivision Tort Claims Act. *See also E–Z Parks, Inc. v. Philadelphia Parking Authority,* 110 Pa. Commw. 629, 532 A.2d 1272 (1987).

■ The only remaining question with respect to both the City and the PHDC, therefore, is whether either entity is subject to liability because of any of the exceptions to governmental immunity set forth in the Political Subdivision Tort Claims Act. Of the eight (8) exceptions, plaintiffs claim that two (2) are applicable here.

The first exception relied upon by the plaintiffs is the real property exception set forth in 42 Pa.Cons.Stat.Ann. § 8542(b)(3) which provides, in pertinent part:

> (b) **Acts which may impose liability.—** The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
> (3) **Real property.—**The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency....

Plaintiffs argue that the property itself, where Weinerman was injured, was the dangerous condition which caused his injuries. Plaintiffs contend that Weinerman's injuries occurred because the porch columns needed replacement and because the roof and defective columns were dangerous. This theory is without merit. Rather, it is undisputed that the jack and lolly column caused Weinerman's injuries. As previously noted, Weinerman was struck in the head by the lolly column when it dislodged while being lifted hydraulically to raise the porch roof. Neither the jack nor the lolly column is real estate or a fixture.

Equally significantly, plaintiffs' theory ignores the settled law that the real estate exception must be narrowly construed. The exception "can be applied only to those cases where it is alleged that the artificial condition or defect of the land itself causes the injury, not merely when it facilitates the injury by the act of others, whose acts are outside the statute's scope of liability." *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987). Thus, there is no basis for accepting either plaintiffs' primary theory which attempts to justify application of the real estate exception on the ground that the property was the dangerous condition that caused the injury, or their related, alternative theory that the support column being affixed contributed to the injuries sustained by Weinerman.

Plaintiffs next claim that the real estate exception is applicable because of the duty of the City and the PHDC to "maintain the property safely for the activities for which it is regularly used, for which it is intended to be used, or for which it may be reasonably foreseen to be used." *Mascaro, supra,* 523 A.2d at 1123. This argument is a *non sequitur.* It illogically assumes a duty to rehabilitate the property so that it would be "safe" to rehabilitate.

■ The alternative exception relied upon by plaintiffs is the personal property exception set forth at § 8542(b)(2) of the Political Subdivision Tort Claims Act which provides:

> (b) **Acts which may impose liability.—** The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
> (2) **Care, custody or control of personal property.—**The care, custody or control of personal property of others in the possession or control of the local agency. The only losses for which damages shall be recoverable under this paragraph are those property losses suffered with respect to the personal property in the possession or control of the local agency.

To avoid summary judgment and to support application of the personal property exception, plaintiffs argue that genuine issues of material fact exist about the ownership, care, custody and/or control of the jack and lolly column which caused the injuries.[4] In so doing they ignore the un-

---

4. Plaintiffs also argue that this exception applies

because the wrought iron replacement column

contradicted deposition testimony of Domenic Monte establishing that he exercised custody and control of the jack and lolly column. He purchased the jack, brought both the jack and lolly column with him to the site, and did not keep the lolly column on the site where Weinerman was injured.

Instead, plaintiffs rely primarily upon section 14.1.1 of the contract which states that "All materials and workmanship shall be subject to inspection, examination or test by PHDC and its representatives at any and all times during manufacture, installation or construction and at any and all places where such manufacture, installation or construction may take place." Plaintiffs' reliance upon this contractual provision, and—to a lesser extent—upon certain other contractual provisions is neither logically compelling nor supported by the case law. In *Donaldson, supra,* the court was called upon to apply the personal property exception under Pennsylvania's sovereign immunity statute. That statute, found at 42 Pa.Cons.Stat.Ann. § 8521 *et seq.,* governs immunity of Commonwealth parties, rather than local agencies. Its personal property exception, however, is sufficiently similar to the personal property exception here at issue under the Political Subdivision Tort Claims Act, *Donaldson, supra,* 596 A.2d at 279, so that the *Donaldson* decision is instructive.

The *Donaldson* court specifically rejected an argument similar to that asserted by plaintiffs to the effect that certain defective scaffolding was under the care, custody or control of the Department of Transportation "by virtue of its setting of the specifications in the contract and its right to inspect the workplace." That court held that "regulatory and enforcement powers do not constitute 'care, custody or control' of property" for purposes of the statutory exception. *Donaldson, supra,* 596 A.2d at 280, relying upon *Kline v. Pennsylvania Mines Corp.,* 120 Pa.Commw. 7, 547 A.2d 1276 (1988). Accordingly, under the facts of this case PHDC cannot be liable under

the personal property exception of the Political Subdivision Tort Claims Act.

The joint motion of the City and the PHDC for summary judgment will be granted.

## MEMORANDUM ON MOTIONS

■ Before the Court is the motion of defendant, A & J General Carpentry Company, Inc. ("A & J"), to amend its answer to plaintiffs' complaint. The Court will not permit A & J to amend an answer, filed approximately eight (8) months ago, particularly when the case is close to trial.

A & J has also moved to vacate the Court's Order of February 21, 1992 insofar as it denied the motion of defendant A & J for summary judgment 785 F.Supp. at 1176. A & J seeks to have this Court reconsider and grant its motion for summary judgment, or in the alternative to certify this matter for immediate appeal.

A & J renews its contention that it is entitled to immunity from suit under the Pennsylvania Workmen's Compensation Act ("Compensation Act"), 77 Pa.Cons.Stat. Ann. § 481(a). This Court, however, remains of the view that such immunity is not available to A & J for two alternative reasons.

Initially, the Court reaffirms its reliance upon *Donaldson v. Commonwealth, DOT,* 141 Pa.Cmwlth. 474, 596 A.2d 269, 276 (1991). *Donaldson* is the most recent Pennsylvania appellate Court decision addressing the question of whether the exclusive remedy provision of § 481(a) applies to an entity which has not provided payment of worker's compensation benefits.

■ Alternately, notwithstanding A & J's renewed arguments, this Court reaffirms its prior determination that A & J cannot meet the statutory employer test under the Compensation Act. For purposes of that Act, a statutory employer must meet the following five part test:

(1) An employer who is under contract with an owner or one in the position of

---

being installed by Monte was within the care, custody or control of the moving defendants. This is a baseless and irrelevant claim, however,

since the column plainly was not the cause of the injuries at issue.

an owner. (2) Premises occupied by or under the control of such employer. (3) A sub-contract made by such employer. (4) Part of the employer's regular business intrusted to such subcontractor. (5) An employee of such subcontractor. *Donaldson, supra,* 596 A.2d at 276.

Substantial issues of material fact exist on the question of whether A & J qualifies as a statutory employer under this test. By way of illustration, there is a genuine question as to whether A & J either occupied or exercised the *actual* control over the property in question which is necessary to meet part two of the test. *See Donaldson, supra,* 596 A.2d at 276. Indeed, A & J implicitly recognized this deficiency when it moved to amend its answer to the complaint, simultaneously with the filing of its Motion to Reconsider, so as to relieve itself of the following portion of ¶ 12 of its previously filed answer:

> Denied. It is denied that the answering defendant, its agent, servants or employees, owned, controlled, possessed, maintained or had under its care, responsibility or supervision the situs referred to in the complaint. On the contrary, it is averred that said situs was possessed or controlled by defendants, City of Philadelphia and Philadelphia Housing Development Corporation, who are primarily responsible for maintaining said situs in a reasonably safe condition ...

There is also a question as to whether the work "intrusted" was in fact "part of the employer's regular business" and, thus whether part four of the test is met.

Accordingly, the motion for reconsideration will be denied. Plaintiffs' motion to certify under 28 U.S.C. § 1292 and Rule 5 of the Federal Rules of Appellate Procedure will also be denied. It is similarly without merit because an immediate appeal will not materially advance the ultimate termination of this litigation.