Vasaturo v. Nason & Cullen Inc.

*Mark F. Pinnie* and *Anthony S. Pinnie,* for plaintiffs.

*James J. Donahue* and *Warren G. Kantz,* for defendant Nason and Cullen.

*Angela Maione Costagan,* for defendant Duggan and Marcon.

COHEN, *J.,* March 7, 2001—This contractual indemnification case was tried before this court sitting without a jury on October 19, 2000. The putative plaintiff, Nason & Cullen Inc., had settled with the plaintiffs, Joseph and Lisa Vasaturo, prior to litigation for $225,000. Pursuant to the indemnification clause in the contract between Nason and the additional defendant, Duggan & Marcon Inc., the court found in favor of Nason and against

Duggan in the amount of $225,000 plus reasonable attorneys' fees. The court reviewed post-verdict motions of both parties. The court then granted Nason's motion to mold the verdict to include attorneys' fees in the amount of $70,724.67 and denied Duggan's motion for judgment n.o.v. and entered judgment in the amount of $295,724.67 in favor of Nason and against Duggan on February 15, 2001.

## FACTS

Mr. Joseph Vasaturo testified that on December 9, 1996, while employed as a spray fireproofer by Duggan, he was injured on the job at the High School for Creative and Performing Arts in Philadelphia. (N/T p. 19.) Spray fireproofing involves applying cementitious material to the steel of a building as it is being constructed. (N/T p. 20.) The witness testified that he and his assistant laborer, Mark Peters, were spraying the ceiling, the roof deck, and the beams in the penthouse at the school when the accident occurred. (N/T pp. 20-21.)

Mr. Vasaturo testified that as he and Mr. Peters were moving their scaffold toward the wall to complete another section, the scaffold caught up on a pipe or something that was mounted on the floor or fixed or just laying there." (N/T p. 22.) He testified that once the scaffold's wheel hit the object, which was 12 to 15 inches in diameter, the wheel came off and the scaffold fell over. (N/T pp. 23-24.) The witness testified that when the scaffold fell it did not fall directly on him. (N/T p. 29.) Mr. Vasaturo testified that although he felt instant pain at that time, he continued working. (N/T p. 23.)

According to his testimony, Mr. Vasaturo complained to his supervisor, Jim Smith, about the condition of the

penthouse prior to the accident. (N/T p. 30.) Mr. Vasaturo testified that Mr. Smith told him to "do the best I could," keep a log of everything, and report it to Bill Frazier, who was the superintendent for Nason. (N/T p. 31.) He testified that he also complained to Mr. Frazier and asked Mr. Frazier to have some objects moved out of the penthouse and to stop putting more objects in the room. (N/T pp. 31-32.)

The witness further testified that during the beginning of their work in the penthouse he, Mr. Peters, and other Duggan employees tried to clean up the penthouse. Mr. Vasaturo testified that they did not move the piece of pipe in question during this cleanup because there were pieces of "little pipes and knuckles laying everywhere." He testified that they could only move so many items and that they believed they had a "clear enough space." (N/T p. 33.)

Bill Frazier, who was the superintendent for Nason at the school on the day of the accident, testified that in his role as superintendent he was in charge of all of the subcontractors that worked directly for Nason. (N/T p. 60.) The witness testified that prior to the accident, he and Mr. Vasaturo had inspected the penthouse and decided that he could work in the room. (N/T pp. 61-62.)

According to Mr. Frazier's testimony, the mechanical equipment, which weighed approximately 15 tons, had to be placed in the penthouse before the roof was closed because of its size. Mr. Frazier testified that the roof had to be closed before the fireproofing began, thus a decision was made to bring in the mechanical equipment, seal the roof, and begin the job. (N/T pp. 62-63.) He testified that before the spray fireproofing began, everyone was directed to clean up the penthouse as much as pos-

sible and move anything that was not "anchored down" to the other side. (N/T p. 63.)

The principal issue is the interpretation of the contract. In this case the court found that the contract required indemnification if the injured party's employer was in any way negligent and that negligence contributed to the accident. The employer had a duty to clear the roof of debris and failed to do so.

## DISCUSSION

### I. *The Verdict Was Entered in Favor of Nason and Against Duggan Because the Indemnification Clause in the Contract Was Valid and Enforceable*

An employer may be liable to a third party for injuries sustained by its own employees where indemnification is "expressly provided for in a written contract . . . ." 77 P.S. §481(b). The indemnification clause in the contract must be clear and cover indemnification by the employer for injuries to its own employees due to the negligence of the indemnitee. *Bester v. Essex Crane Rental Corp.,* 422 Pa. Super. 178, 186, 619 A.2d 304, 307 (1993), *appeal denied,* 539 Pa. 641, 651 A.2d 530 (1994), citing *Szymanski-Gallagher v. Chestnut Realty,* 409 Pa. Super. 323, 597 A.2d 1225 (1991). If the contract meets this requirement, the employer is not further required to expressly waive immunity under section 481(b) of the Workers' Compensation Act. *Id.* However, the parties' intent to indemnify against such claims must "clearly appear" from the terms of the agreement. *Id.,* citing *Remas v. Duquesne Light Co.,* 371 Pa. Super. 183, 537 A.2d 881 (1988).

The workmen's compensation statute in Pennsylvania typically provides the sole remedy for an employee to recover against his or her employer for work-related injuries. See 77 P.S. §481. However, the statute provides an exception to the general rule:

"In the event injury or death to an employee is caused by a third party, then such employee . . . may bring their action at law against such third party, but the employer . . . shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action." 77 P.S. §481(b).

Although the statute makes it clear that an indemnification clause, which is at issue here, must be express, the legislature failed to state the precise language it required. Thus, a substantial amount of case law has developed in this area.

Two recent cases reinforce the notion that the contract between the employer and the indemnitee must expressly provide for the employer's liability where the injury was caused by the negligence of the indemnitee. See *Mace v. Atlantic Refining & Marketing Corp.,* 717 A.2d 1050 (Pa. Super. 1998), *allocatur granted,* 562 Pa. 664, 753 A.2d 819 (2000); *Bester v. Essex Crane,* 422 Pa. Super. 178, 619 A.2d 304. In *Mace,* a customer at a mini-mart was beaten with a baseball bat by a store employee. *Id.* at 1050. The victim sued the employee, Perry; the employer, Barqawi; and the owner, Atlantic. *Id.* Defendants Atlantic and Barqawi cross-claimed against each other and Atlantic won summary judgment on the claims of the

plaintiff and cross-claimant Barqawi. *Id.* Atlantic's claim against Barqawi, which was based on contractual indemnity, was also dismissed and was the subject of the appeal to the Superior Court.

Since the indemnification clause in their agreement only barred indemnification where the injury was caused by Atlantic's *sole* negligence, the court deemed the clause inapplicable to the situation. *Id.* at 1052. Atlantic's argument that the existence of this sole negligence clause implied that it was entitled to indemnity in cases of joint or partial responsibility failed. *Id.* The court reiterated the age-old rule that because liability for indemnity is a risky venture, the parties must use clear and unequivocal language when assuming such liability. *Id.*

According to the court,

"[Prior case law] demands precision and parties who rely on ambiguity or inference cannot thereby claim the benefit of indemnity." *Id.*

Thus, Atlantic could not claim indemnity in reliance on the sole negligence provision contained in the contract.

The court in *Bester* also refused to impose indemnity liability where the contract language did not expressly provide that the employer would be held liable in indemnification for injuries to its own employees caused by the negligence of the indemnitee. *Id.* at 187, 619 A.2d at 308. An employee of Russell Construction Company sued Essex Crane, which leased a crane to the contractor, for personal injuries which were caused by one of Essex Crane's employees. *Id.* at 180, 619 A.2d at 305. Essex Crane then sought indemnification from Russell Construction Company pursuant to an indemnification

clause in their agreement. *Id.* The court deemed the language of the clause too general because it did not specifically state that Russell would indemnify Essex for its own negligence. *Id.* at 183, 619 A.2d at 306. The court stated:

"We apply today the requirement in the law that in order for an employer to be held liable in indemnification for injuries to its own employees caused by the negligence of the indemnitee there must be an express provision for this contingency in the indemnification clause." *Id.* at 187, 619 A.2d at 308.

The intent of the parties to cover this indemnification must "clearly appear" from the terms of the agreement. *Id.* at 185, 619 A.2d at 307, citing *Remas v. Duquesne Light Co.,* 371 Pa. Super. 183, 537 A.2d 881 (1988). Every case on the subject since 1907 has reiterated that the indemnification language must be "clear and unequivocal." See *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907); *Pittsburgh Steel Co. v. Patterson-Emerson-Comstock Inc.,* 404 Pa. 53, 171 A.2d 185 (1961); *Babcock & Wilcox Co. v. Fischbach & Moore Inc.,* 218 Pa. Super. 324, 280 A.2d 582 (1971); *Ruzzi v. Butler Petroleum Co.,* 527 Pa. 1, 588 A.2d 1 (1991); *Woodburn v. Consolidation Coal Co.,* 404 Pa. Super. 359, 590 A.2d 1273 (1991); *Hackman v. Moyer Packing,* 423 Pa. Super. 378, 621 A.2d 166 (1993) et al. Finally, the *Bester* court stated that if the indemnification agreement is clear on this issue, the employer is not required to expressly waive its immunity under the Workmen's Compensation Act. *Id.* at 185, 619 A.2d at 307, citing *Szymanski-Gallagher v. Chestnut Realty,* 409 Pa. Super. 323, 597 A.2d 1225 (1991).

In the instant case, the indemnification language in the contract between Nason and Duggan was much stron-

ger than any language previously reviewed by the Superior Court. Paragraph 13 of the agreement reads:

"To the fullest extent permitted by law, Subcontractor shall indemnify, defend and hold harmless the Owner, architect and the Contractor and all of their respective agents, employees, officers, shareholders, directors and representatives from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from the performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than to the work itself) including loss of use resulting therefrom, caused in whole or in part by any act or omission of the Subcontractor or anyone directly or indirectly employed by it or anyone for whose acts it may be liable *regardless of whether it is caused in part by a party indemnified hereunder.* Such obligation shall not be construed to negate or abridge or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this paragraph.

"In any and all claims against Owner, the architect, or the Contractor or any of their respective officers, shareholders, directors, representatives, agents or employees by any employee of the Subcontractor, anyone directly or indirectly employed by it or anyone for whose acts it may be liable, *the indemnification obligation under this paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under Work-*

*ers or Workmens' Compensation acts, disability benefits acts or other employee benefit acts.*

"The obligations of the Subcontractor under this paragraph shall not extend to the liability of the architect, its officers, shareholders, directors, representatives, agents or employees arising out of (1) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or (2) the giving of or failure to give directions or instructions by the architect, its agents, representatives or employees provided such giving or failure to give is the primary cause of the injury or damage." (emphasis added)

This language goes above and beyond the requirements set forth in *Bester*. Not only does the clause impose indemnification liability for both Duggan's and Nason's own negligence, it also expressly waives statutory immunity under the Workmen's Compensation Act. It is clear that when Nason and Duggan drafted this agreement, both parties intended to overcome the ambiguities inherent in the statute and the case law. Duggan's attempt to argue otherwise was futile under these circumstances.

Duggan's counsel further argued that the court erred in apportioning negligence between Nason and Duggan because the only issue before the court was contractual indemnification. However, Duggan in its brief missed the point that the court had to apportion negligence between the parties in order to apply the law of indemnification. The court determined after hearing all of the evidence in the case that Nason and Duggan were jointly responsible for Mr. Vasaturo's injuries. The court's finding that Nason and the other defendants were 75 percent

negligent and that Duggan was 25 percent negligent was an appropriate determination to make before imposing indemnification liability on Duggan.

## II. *Nason Was Entitled to Attorneys' Fees in the Amount of $70,724.67 Because Duggan Was Liable To Indemnify Nason for any Attorneys' Fees Incurred Pursuant to the Contract*

The indemnification clause in the agreement between Nason and Duggan clearly provides for indemnification of attorneys' fees. (See agreement, ¶13, *supra* at pp. 10-11.) Since Duggan was found liable to indemnify Nason under the contract, Nason was entitled to recover its attorneys' fees as well as the amount of the settlement. (See discussion, *supra* at I.) Although Nason amended the amount of its attorneys' fees from $90,000 to $70,724.67 since filing its original motion, Duggan's inquiry into the reasonableness of the amount was irrelevant. Nason was entitled to recover the amount of its legal bills under the terms of the indemnification agreement. Duggan submitted no evidence of fraudulent billing to convince the court that the fee requested by Nason was not reasonable.

## CONCLUSION

Based upon the foregoing analysis, the court granted Nason & Cullen Inc.'s motion to mold the verdict to include attorneys' fees and denied Duggan & Marcon Inc.'s motion for judgment n.o.v.